The **ESTATE OF Jennie L. RIEDEL,**
Deceased, by Donna **MIRICK,** Special
Administrator, Respondent,

v.

**LIFE CARE RETIREMENT
COMMUNITIES, INC.,**
Appellant.

No. C7–93–464.

Court of Appeals of Minnesota.

Aug. 24, 1993.

Mark J. Vieno, Dean J. Dovolas, Riley & Dovolas, Douglas R. Whitney, Minneapolis, for respondent.

Daniel D. Thue, Rath & Thue, P.A., Edina, for appellant.

## OPINION

HAROLD W. SCHULTZ, Acting Judge.[*]

Appellant Life Care Retirement Communities, Inc. challenges summary judgment, contending the statute of limitations bars respondent Estate of Riedel from bringing a breach of contract action and arguing the district court erred in ordering it to pay damages. Respondent filed a notice of review, contending its consumer fraud claim was not barred by the statute of limitations. We affirm in part, reverse in part, and remand.

## FACTS

On May 15, 1979, decedent Jennie L. Riedel (decedent) executed a "residency agreement" with appellant Life Care Retirement Communities, Inc. (Life Care). Decedent paid Life Care an entrance endowment fee of $60,000, and agreed to pay a monthly fee of $570 for a living unit and various other services in a retirement village. The residency agreement made provisions for reimbursement of the entrance endowment fee under certain circumstances:

> [I]n the event of the death of Resident, Sponsor will attempt to obtain a new resident for the Living Unit. From the entrance endowment paid by such new resi-

---

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap- pointment pursuant to Minn.Const. art. VI, § 10.

dent, to the extent such sum is sufficient, Resident (or Resident's estate) will be reimbursed for the amount of the entrance fee previously paid by Resident, less an appropriate charge of the period of his or her residency and the period until the new resident assumes residency, provided that such repayment in the sole opinion of Sponsor, does not jeopardize the sound financial structure of Sponsor. In any event, *Sponsor will retain one percent (1%) of the entrance endowment per month of residency (three percent (3%) per month of residency if termination results from the death of Resident during the first 34 months of residency), or twenty-two percent (22%) of the entrance endowment, whichever is greater.*

(Emphasis added.)

Decedent died on December 2, 1983, 39 months after she began living at the retirement village. On January 13, 1984, Life Care notified the representatives of decedent's estate that no refund was due. Life Care based this conclusion upon a calculation of 39 months multiplied by 3%, the total of which (117%) was greater than 22%.

In 1987, decedent's heirs learned of a possible miscalculation of the entrance endowment refund. From 1987 through 1989, the heirs' attorney corresponded and negotiated with Life Care, but did not commence litigation. Frustrated with the slow progress of their claim, the heirs hired a new attorney in late December 1989. When Life Care continued to refuse a refund, the heirs petitioned for an emergency appointment of a special administrator to pursue the estate's claims against Life Care. On January 12, 1990, respondent Estate of Riedel (the estate), sued Life Care alleging, inter alia, breach of contract and violation of the Minnesota Consumer Fraud Law, Minn.Stat. § 325F.68 (1992).

Following discovery, Life Care moved for summary judgment alleging the statute of limitations barred the breach of contract and consumer fraud claims. The district court concluded the estate's breach of contract action was not barred because it accrued when Life Care communicated its refund calculation on January 13, 1984. The court then concluded the plain and unambiguous language of the residency agreement required Life Care to calculate the refund according to the 1% formula and, sua sponte, granted summary judgment to the estate on the breach of contract claim, ordering Life Care to pay the estate $36,600 plus costs, disbursements and prejudgment interest. In addition, the court held the Minnesota Consumer Fraud Law to be a penal statute, subject to the two-year statute of limitations provided in Minn.Stat. § 541.07, subd. 1(2) (1992). Thus, the court determined the estate's consumer fraud claim was time-barred.

On March 4, 1993, Life Care filed a notice of appeal, challenging the application of the statute of limitations in the breach of contract action and further challenging the sua sponte granting of summary judgment. Thereafter, on March 15, 1993, the estate filed a notice of review, challenging the determination that the consumer fraud claim was barred by the two-year statute of limitations.

## ISSUES

I. When did the breach of contract action accrue?

II. Did the district court err in sua sponte granting summary judgment to the estate on the breach of contract claim?

III. Is the Minnesota Consumer Fraud Law, Minn.Stat. § 325F.68 (1992), a penal statute subject to a two-year statute of limitations?

## ANALYSIS

### *Standard of Review*

■ In reviewing summary judgment, this court determines whether any genuine issues of material fact exist for trial and whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). The evidence is viewed in the light most favorable to the nonmoving party. *Grondahl v. Bulluck,* 318 N.W.2d 240, 242 (Minn.1982).

## I. Breach of Contract

■ Minn.Stat. § 541.05, subd. 1(1) (1992) prescribes a six-year limitations period for actions upon a contract. Unless a statute provides otherwise, the limitations period begins to run when the cause of action accrues. Minn.Stat. § 541.01. Generally, a cause of action accrues when a party may bring suit without dismissal for failure to state a claim. *Levin v. C.O.M.B. Co.*, 441 N.W.2d 801, 803 (Minn.1989). Specifically, a breach of contract action accrues at the time of the breach, even though actual damages occur later. *Bachertz v. Hayes–Lucas Lumber Co.*, 201 Minn. 171, 176, 275 N.W. 694, 697 (1937) *cited in Levin*, 441 N.W.2d at 803.

■ The estate sued Life Care for breach of the residency agreement. Thus, the statute of limitations began to run when the breach occurred. *See id.* Although Life Care contends the estate's claim accrued upon decedent's death, it fails to state any facts showing a breach on that date. Life Care was obligated by the terms of its contract to refund a portion of decedent's endowment fee. It miscalculated the refund due and refused to pay the estate. Thus, the breach occurred on January 13, 1984, when Life Care failed to perform according to the contract terms. The estate sued Life Care on January 12, 1990, one day before the limitations period expired.

In an alternative argument, Life Care contends the statute of limitations began running at the time it contracted with a new resident for decedent's living unit. Because the record does not contain the date of this contract, Life Care argues a material fact question exists precluding summary judgment. We disagree.

The estate is not alleging a breach based upon Life Care's obligation to obtain a new resident. Rather, the estate alleges Life Care breached the residency agreement when it erroneously informed the estate that no refund was due. This breach occurred on January 13, 1984. Thus, the specific date that Life Care contracted with a new resident is not material in determining the date of the ultimate breach.

## II. Sua Sponte Summary Judgment

■ A district court may, sua sponte, grant summary judgment if, under the same circumstances, it would grant summary judgment on motion of a party. *Del Hayes & Sons, Inc. v. Mitchell*, 304 Minn. 275, 280, 230 N.W.2d 588, 591–92 (1975). A reviewing court will not disturb the district court's "inherent power to grant summary judgment" unless the objecting party can show prejudice from lack of notice, from procedural irregularities, or from the lack of a meaningful opportunity to oppose summary judgment. *Federal Land Bank of St. Paul v. Obermoller*, 429 N.W.2d 251, 255 (Minn.App. 1988), *pet. for rev. denied* (Minn. Oct. 26, 1988).

Life Care claims prejudice because it was deprived of an opportunity to inform the court of the date that it contracted with a new resident. As we have already noted, this information is not material to the date of Life Care's breach. Thus, Life Care did not suffer prejudice as a result.

■ We agree with the district court that the residency agreement is unambiguous and that the material facts are not disputed. The residency agreement states that for residents dying within the first 34 months of residency, Life Care will retain the greater of either 22% of the entrance endowment or 3% of the entrance endowment per month of residency. In all other cases, Life Care will retain the greater of either 1% of the entrance endowment per month of residency or 22% of the entrance endowment. Decedent resided at the retirement village for 39 months. Thus, the 3% formula does not apply. Thirty-nine months multiplied by one percent (39%) is greater than 22%. Therefore, Life Care was entitled to retain 39% of the $60,000 entrance endowment ($23,400), and was obligated to refund $36,600 to the estate. Based upon the record before it, the district court properly granted summary judgment to the estate.

## III. Consumer Fraud Law

■ Minn.Stat. § 541.05, subd. 1(2) (1992) provides a six-year limitations period for actions based upon a statute. Where the

statute is for a penalty or forfeiture, however, a two-year limitations period applies. Minn.Stat. § 541.07(2) (1992). A statute is considered penal for limitations purposes if it punishes an offense against the public rather than redresses a private wrong. *Freeman v. Q Petroleum Corp.*, 417 N.W.2d 617, 618 (Minn.1988). A statute is "for a penalty" where liability is imposed as a consequence of a violation of the law, even though the injured party has not suffered "any real loss." *Merchants' Nat'l Bank of Chicago v. Northwestern Mfg. Car Co.*, 48 Minn. 349, 357, 51 N.W. 117, 118 (1892). Penalty "embrace[s] something other than damages or pecuniary loss." *Freeman*, 417 N.W.2d at 618. Courts also consider whether the statutory liability is measured by or related to the injury. *Merchants' Bank*, 48 Minn. at 357, 51 N.W. at 118.

■ The estate claims the district court erred in holding the Consumer Fraud Law to be a statute for a· penalty or forfeiture subject to the two-year statute of limitations. *See* Minn.Stat. §§ 541.05, subd. 1(2); 541.07(2). The estate argues the Consumer Fraud Law is remedial, rather than penal, and therefore subject to a six-year statute of limitations.

The Consumer Fraud Law allows for an injunction against persons who use fraudulent or misrepresentative practices to induce consumer reliance in connection with the sale of goods, real estate, or services. Minn.Stat. § 325F.69, subd. 1 (1992). The attorney general or county attorney may pursue an injunction against violators of the Consumer Fraud Law. Minn.Stat. § 325F.70, subd. 1 (1992) In addition, a private party injured by a violation of the Consumer Fraud Law may bring a civil action to recover damages, costs of investigation, attorney fees and other equitable relief. Minn.Stat. § 8.31, subds. 1, 3a (1992).

In *Freeman*, the supreme court considered whether Minn.Stat. § 181.75 (1986) (prohibits employers from requiring polygraph tests as a condition of employment) was a penal statute for purposes of the two-year statute of limitations. *Freeman*, 417 N.W.2d at 618. The polygraph statute is identical to the Consumer Fraud Law in allowing the attorney general to pursue an injunction. *Compare* Minn.Stat. § 181.75, subd. 1 (1986) *with* Minn.Stat. § 325F.70, subd. 1 (1992). In addition, the polygraph statute contains a provision nearly identical to Minn.Stat. § 8.31, subd. 3a allowing a private party to sue for damages and attorney fees. Minn.Stat. §§ 8.31, subd. 3a (1992); 181.75, subd. 4 (1986).[1]

In discussing whether the polygraph statute was "for a penalty," the *Freeman* court noted that the polygraph statute did not impose an arbitrary monetary penalty for a violation, but merely allowed recovery of provable damages "along with certain costs." *Freeman*, 417 N.W.2d at 618. As the polygraph statute did not impose liability apart from actual damages, the court concluded it did not impose a penalty within the meaning of the statute of limitations, and refused to apply the two-year limitations period. *Id.* at 619.

We believe the reasoning of *Freeman* is controlling in the present case. Here, as in *Freeman*, the Consumer Fraud Law does not impose an arbitrary monetary penalty, but rather "allows recovery only by persons injured by a violation, and then only recovery of probable damages along with certain costs." *See id.* at 618. The plaintiff's injury stands as the measure of the defendant's liability under the Consumer Fraud Law; the plaintiff may not recover anything separate from or additional to its damages and costs. *See* Minn.Stat. § 8.31, subds. 1, 3. The estate's recovery under the Consumer Fraud Law is inextricably tied to its actual

---

1. Minn.Stat. § 8.31, subd. 3a (1992) states:
   "any person injured by a violation of [the Consumer Fraud Law] may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court".

Minn.Stat. § 181.75, subd. 4 (1986) states:
   "any person injured by a violation of this section may bring a civil action to recover any and all damages recoverable at law, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court."

loss. *See Freeman,* 417 N.W.2d at 619. Thus, the Consumer Fraud Law is not penal in nature, and is not subject to the two-year limitations period of Minn.Stat. § 541.07(2). Rather, we conclude actions brought under the Consumer Fraud Law are subject to a six-year limitations period under Minn.Stat. § 541.05, subd. 1(2).

## DECISION

The breach of contract action accrued on January 13, 1984, the date of the breach. The district court did not err in sua sponte granting summary judgment to the estate. The Minnesota Consumer Fraud Law, Minn. Stat. § 325F.69 (1992), is a nonpenal statute and is subject to a six-year limitations period.

**Affirmed in part, reversed in part and remanded.**

