Raymond SCOTT, Appellant,

v.

**FOREST LAKE CHRYSLER–
PLYMOUTH–DODGE,
Respondent.**

**No. C4–99–161.**

Court of Appeals of Minnesota.

Aug. 24, 1999.

Thomas J. Lyons, Jr., Consumer Justice Center, P.A., and Thomas J. Lyons, Thomas J. Lyons & Associates, P.A., Maplewood, for appellant.

Gregory J. Johnson, Klay C. Ahrens, Johnson & Van Vliet, L.L.P., St. Paul, for respondent.

Considered and decided by SHUMAKER, Presiding Judge, SHORT, Judge, and PETERSON, Judge.

## OPINION

PETERSON, Judge

This action arises from appellant Raymond Scott's purchases of two Dodge Caravans from respondent Forest Lake Chrysler–Plymouth–Dodge. Scott alleged that Forest Lake Chrysler violated the Minnesota Motor Vehicle Retail Installment Sales Act (MMVRISA) by using a conditional delivery agreement and by failing to provide him with copies of retail installment contracts signed by Forest Lake Chrysler. Scott also alleged that Forest Lake Chrysler violated the Minnesota Prevention of Consumer Fraud Act.

The district court granted summary judgment in favor of Forest Lake Chrysler on all claims and dismissed Scott's complaint with prejudice. This appeal is from the judgment in favor of Forest Lake Chrysler. We affirm in part, reverse in part, and remand. We grant Forest Lake Chrysler's motion to strike.

## FACTS

On August 11, 1994, Scott signed a retail installment contract to purchase a 1991 Dodge Caravan from Forest Lake Chrysler for $15,257 plus $815.71 in fees. The contract provided that credit would be extended in the amount of $15,177.71, that interest would be charged at an 11.5% annual percentage rate, and that Scott would make 60 monthly payments of $335.39. Under these terms, Scott's total interest charge would have been $4,945.69 and the total amount paid under the contract, excluding Scott's initial $900 down payment, would have been $20,123.40. The contract provided that Forest Lake Chrysler assigned its interest in the contract to Comerica Bank. The copy of the contract given to Scott was not signed by Forest Lake Chrysler.

The same day, Scott and Forest Lake Chrysler executed a conditional delivery agreement that stated:

> YOU, the undersigned Buyer * * *, agree with ME, the Dealer, to incorporate the following terms by reference into the Motor Vehicle Purchase Contract and any Installment Sales Contract to purchase [the 1991 Dodge Caravan].
> * * * *
>
> 2. YOU understand and agree that the vehicle has been delivered to YOU conditionally subject to approval of financing. If financing is not approved, I will notify YOU and YOU agree to immediately return the vehicle to ME. In addition, YOU agree to pay twenty-five cents per mile for all miles placed on the vehicle after delivery plus any or all damages beyond normal wear and tear. If financing is not approved, any Install-

ment Sales Contract executed for purchase of the above-described vehicle shall be null and void.

Comerica declined to extend financing to Scott under the terms of the retail installment contract. After Forest Lake Chrysler lowered the purchase price for the 1991 Dodge Caravan to $14,988 plus fees of $803.22, Chrysler Credit agreed to extend credit to Scott in the amount of $14,891.22 for a 60–month period with monthly payments of $384.27 and interest charged at an 18.4% annual percentage rate. Under these terms, Scott's total interest charge would be $8,164.98 and the total amount paid under the contract, excluding the $900 down payment, would be $23,056.20. On August 23, 1994, Scott signed a retail installment contract containing these terms. The copy of the retail installment contract given to Scott was not signed by Forest Lake Chrysler.

Scott alleges that Forest Lake Chrysler notified him that it had obtained financing from a source other than Comerica but failed to disclose that other terms of the August 23, 1994, retail installment contract differed from the terms of the August 11, 1994, retail installment contract. Scott also alleges that, while at Forest Lake Chrysler on August 23, 1994, his wife pointed out the increased interest rate and monthly payments, and a Forest Lake representative stated that the van's purchase price had been lowered to compensate for the increased interest rate. Later that day, after realizing that the increased interest rate would increase the total contract price by $2,932.80, Scott returned to Forest Lake Chrysler seeking to return the 1991 Dodge Caravan and to have his trade-in vehicle returned to him. Scott stated in an affidavit that Forest Lake Chrysler informed him that he was bound by the August 23, 1994, retail installment contract and that his trade-in vehicle had already been sold.

In November 1995, Scott returned to Forest Lake Chrysler and traded in the 1991 Dodge Caravan for a 1995 Dodge Caravan. The purchase price of the 1995 Dodge Caravan was $23,988 plus $746.95 in fees. The contract provided that credit would be extended in the amount of $23,954.95, that interest would be charged at an 11.05% annual percentage rate, and that Scott would make 66 monthly payments of $486.26. The total amount to be paid under the contract was $32,093.16, excluding Scott's $785 down payment. The copy of the November 1995 retail installment contract provided to Scott was not signed by Forest Lake Chrysler.

## ISSUES

I.   Did Forest Lake Chrysler violate Minn.Stat. § 168.71(a)(1) (1994) by using the conditional delivery agreement?

II.   Did Forest Lake Chrysler violate Minn.Stat. § 168.71(a)(1) (1994) by failing to furnish Scott with copies of the retail installment contracts that were signed by Forest Lake Chrysler?

III.   Did Forest Lake Chrysler violate the Minnesota Prevention of Consumer Fraud Act by using the conditional delivery agreement?

## ANALYSIS

On appeal from a summary judgment, this court must review the record to determine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *In re Estate of Palmen*, 588 N.W.2d 493, 495 (Minn.1999). We must view the evidence in the light most favorable to the nonmoving party. *Id.*

### I.

Statutory interpretation is a question of law subject to de novo review. *Metropolitan Sports Facilities Comm'n v. County of Hennepin*, 561 N.W.2d 513, 515 (Minn.1997).

When interpreting statutes, our function is to ascertain and effectuate the intention of the legislature. If the statute is free from ambiguity, we look only at its plain language. However, if the

statute's literal meaning leads to an absurd result that utterly departs from the legislature's purpose, we may look beyond the language and examine other indicia of legislative intent. If, by contrast, the statute's unambiguous language merely produces a troubling result, we must apply it without reference to its drafting history.

*Anker v. Little*, 541 N.W.2d 333, 336 (Minn.App.1995) (citations omitted), *review denied* (Minn. Feb. 9, 1996).

Minn.Stat. § 168.71 (1994) provides:

(a)(1) Every retail installment contract shall be in writing, shall contain all the agreements of the parties, shall be signed by the retail buyer and seller, and a copy thereof shall be furnished to such retail buyer at the time of the execution of the contract.

\* \* \* \*

(b) The retail installment contract shall contain the following items:

(1) The cash sale price of the motor vehicle which is the subject matter of the retail installment contract;

(2) The total amount of the retail buyer's down payment, whether made in money or goods, or partly in money or partly in goods;

(3) The difference between items one and two;

(4) The charge, if any, included in the transaction for any insurance and other benefits not included in clause (1), specifying the types of coverage and taxes, fees, and charges that actually are or will be paid to public officials or government agencies, including those for perfecting, releasing, or satisfying a security interest if such taxes, fees, or charges are not included in clause (1);

(5) Principal balance, which is the sum of items three and four;

(6) The amount of the finance charge;

(7) The total of payments payable by the retail buyer to the retail seller and the number of installment payments required and the amount of each installment expressed in dollars or percentages, and date of each payment necessary finally to pay the total of payments which is the sum of item five and item six.[1]

■ Forest Lake Chrysler argues that the August 11, 1994, retail installment contract contained all of the information required by Minn.Stat. § 168.71(b) and, therefore, using the conditional delivery agreement did not violate Minn.Stat. § 168.71. The express language of Minn. Stat. § 168.71(a)(1), however, requires that the retail installment contract "shall contain all the agreements of the parties." One of the agreements between Scott and Forest Lake Chrysler was that the retail installment contract and the credit terms therein were conditional and would be null and void if financing was not approved. That agreement was not set forth or referenced anywhere in the retail installment contract. Use of the conditional delivery agreement, thus, violated the express language of Minn.Stat. § 168.71(a)(1).

■ One of the purposes of Minn.Stat. § 168.71(a)(1) "is to inform the installment buyer of the cost of the credit extended to him." *O'Brien v. Phillips Motors Excelsior, Inc.*, 288 Minn. 183, 185, 179 N.W.2d 158, 160 (1970). Although the conditional delivery agreement did not directly contradict or alter any term of the retail installment contract, the failure to obtain financing approval ultimately invalidated

1. In 1996, Minn.Stat. § 168.71(a)(1) was amended to provide:

Every retail installment contract shall be in writing, shall contain all the agreements of the parties, shall be signed by the retail buyer and seller, and a copy signed by the retail buyer shall be furnished to such retail buyer at the time the retail buyer executes the contract. The copy signed by both the retail buyer and retail seller shall be provided to the retail buyer within seven days after delivery of the vehicle. With respect to any contract executed prior to August 1, 1996, which has not been paid in full by the retail buyer, the retail seller shall provide such retail buyer a copy signed by both the retail buyer and retail seller within 120 days after August 1, 1996.

the entire retail installment contract and led to a second retail installment contract with a significantly higher interest rate and a $2,932.80 increase in the total contract price. Due to the failure to obtain financing approval, the retail installment contract did not inform Scott of the cost of credit to him. Consequently, use of the conditional delivery agreement directly contravened the purpose of Minn.Stat. § 168.71(a)(1). We hold that use of the conditional delivery agreement violated Minn.Stat. § 168.71(a)(1).

## II.

■ Minn.Stat. § 168.71(a)(1) provides that every retail installment contract "shall be signed by the retail buyer and seller, and a copy thereof shall be furnished to such retail buyer at the time of the execution of the contract." The copies of the retail installment contracts provided to Scott were not signed by Forest Lake Chrysler.

Forest Lake Chrysler argues that the signature requirement is merely a technical requirement and should not be enforced when the absence of a dealership's signature does not frustrate the MMVRISA's purposes or underlying policies. Forest Lake Chrysler cites unpublished state and federal district court opinions in support of its position. Those opinions determined that the failure to sign did not frustrate the purposes of the MMVRISA. They also relied on the presumption set forth in Minn.Stat. § 645.17(1) (1998), which states that "[t]he legislature does not intend a result that is absurd, impossible of execution, or unreasonable," and declined to enforce the signature requirement in circumstances similar to this case because doing so would produce an absurd and unreasonable result.

■ We are not persuaded by the unpublished opinions cited by Forest Lake Chrysler because those opinions improperly applied the statutory presumption set forth in Minn.Stat. § 645.17(1) to construe a statute that is not ambiguous. " 'No room for judicial construction exists when the statute speaks for itself.' " *Green Giant Co. v. Commissioner of Revenue*, 534 N.W.2d 710, 712 (Minn.1995) (quoting *Commissioner of Revenue v. Richardson*, 302 N.W.2d 23, 26 (Minn.1981)).

> When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

Minn.Stat. § 645.16 (1998). The requirement in Minn.Stat. § 168.71(a)(1) that "[e]very retail installment contract * * * shall be signed by the retail buyer and seller" is not ambiguous.

■ When a statute is unambiguous, we may look beyond its plain language and examine other indicia of legislative intent only "if the statute's literal meaning leads to an absurd result that utterly departs from the legislature's purpose." *Anker*, 541 N.W.2d at 336. Even when the literal meaning of a statute leads to an absurd result that utterly departs from the legislature's purpose, we must exercise our power to engage in a broader inquiry sparingly.

> While we have the power to engage in a broader inquiry under such circumstances, our judicial role requires us to exercise this authority sparingly and only when a party demonstrates the statute's plain language violates a *clearly* expressed goal of the legislature.

*Id.* at 337.

In construing the requirement in Minn. Stat. § 168.71(a)(1) that a buyer shall be furnished with a copy of the retail installment contract, the supreme court stated that the purpose of the provision "is to inform the installment buyer of the cost of the credit extended to him." *O'Brien*, 288 Minn. at 185, 179 N.W.2d at 160. The *O'Brien* court also indicated that the overall purpose of the MMVRISA is broader, reflecting

> a legislative policy "to bring both regulatory control and conformity into the field of automobile financing" and "to protect

the purchasers of automobiles from the activities of a few individuals who had been guilty of inequitable practices in particular situations."

*Id.* at 184, 179 N.W.2d at 159.

The signature requirement does not conflict with any of the legislative goals recognized in *O'Brien,* and we find no authority indicating any other legislative goals with which the signature requirement conflicts. Although a dealership's signature on a retail installment contract may not be necessary to further the MMVRISA's purposes, Forest Lake Chrysler has produced no evidence and cites no authority indicating that enforcing the plain language of the signature requirement violates a clearly expressed legislative goal.

Forest Lake Chrysler argues that the 1996 amendment to Minn.Stat. § 168.71(a)(1) demonstrates a legislative intent to not require literal compliance with the signature requirement for contracts executed before August 1, 1996. The 1996 amendment retained the signature requirement, but permitted a seller to furnish a buyer with a signed copy of a retail installment contract within seven days after delivery of the vehicle. The amendment further provided:

> With respect to any contract executed prior to August 1, 1996, which has not been paid in full by the retail buyer, the retail seller shall provide such retail buyer a copy signed by both the retail buyer and retail seller within 120 days after August 1, 1996.

Minn.Stat. § 168.71(a)(1) (1996). By retaining the signature requirement when it amended the statute, but giving sellers 120 days to provide buyers with signed copies of previously executed contracts, the legislature, if anything, demonstrated that it considers the signature requirement to be significant. The 1996 amendment provides no basis for us to conclude that enforcing the signature requirement violates a clearly expressed legislative goal.

▮▮▮▮▮▮ is not one of those rare cases in which it is appropriate for this court to depart from a statute's unambiguous language. *See Anker,* 541 N.W.2d at 337–38 (declining to depart from statute's unambiguous language when appellant failed to present evidence demonstrating that the literal meaning of the statutory language violated a clearly expressed legislative goal and enforcing the statute's literal meaning did not conflict with a clear statutory purpose). We hold that Forest Lake Chrysler violated Minn.Stat. § 168.71(a)(1) by failing to provide Scott with copies of the retail installment contracts that were signed by Forest Lake Chrysler.

[11] ▮▮▮▮ argues that this court should determine damages as a matter of law and grant summary judgment in his favor. Minn.Stat. § 168.75 (1994) provides:

> (b) In case of an intentional failure to comply with any provision of sections 168.66 to 168.77, the buyer shall have a right to recover from the person committing such violation, to set off or counterclaim in any action by such person to enforce such contract an amount as liquidated damages, the whole of the contract due and payable, plus reasonable attorneys' fees.

> (c) In case of a failure to comply with any provision of sections 168.66 to 168.77, other than an intentional failure, the buyer shall have a right to recover from the person committing such violation, to set off or counterclaim in any action by such person to enforce such contract an amount as liquidated damages equal to three times the amount of any time price differential charged in excess of the amount authorized by sections 168.66 to 168.77 or $50, whichever is greater, plus reasonable attorneys' fees.

Whether Forest Lake Chrysler violated Minn.Stat. § 168.71(a)(1) intentionally or unintentionally and the amount of damages are fact questions that must be resolved by the district court.

### III.

[12] ▮▮▮▮▮▮ § 325F.69, subd. 1 (1998), provides:

The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

Scott argues that Forest Lake Chrysler's use of the conditional delivery agreement in August 1994 violated Minn. Stat. § 325F.69, subd. 1. Scott argues that Forest Lake Chrysler orally represented that the credit terms of the August 11, 1994, retail installment contract represented a final agreement that was binding on both parties. But the conditional delivery agreement expressly stated that the vehicle was delivered to Scott conditionally subject to financing approval and that if financing was not approved, the retail installment contract was null and void and Scott would have to return the van to Forest Lake Chrysler. The financing approval clause was the second clause in the conditional delivery agreement and was written in normal type. Scott cites no authority applying Minn.Stat. § 325F.69, subd. 1, when oral representations contradicted clear and unambiguous contract language, and the contract language at issue was written in normal type and not hidden among standard form clauses. *Cf. St. Croix Printing Equip., Inc. v. Rockwell Int'l Corp.*, 428 N.W.2d 877, 882 (Minn. App.1988) (reliance on an oral representation is unjustifiable as a matter of law when the written contract directly contradicts the oral representation), *review denied* (Minn. Nov. 16, 1988).

Scott also contends that Forest Lake Chrysler fraudulently induced him to sign the August 23, 1994, retail installment contract by orally misrepresenting that the decrease in the van's price compensated for the increased interest rate. But all of the credit terms, including the total contract price, were clearly written on the August 23 contract with headings in large, bold type. Scott also cites the fact that Forest Lake Chrysler represented that Scott's trade-in vehicle had already been sold as evidence that he was fraudulently induced to sign the retail installment contract. But Scott did not request the return of his trade-in vehicle until after he signed the August 23 contract.

The district court did not err in granting summary judgment in favor of Forest Lake Chrysler on Scott's consumer fraud claim. Because he did not prevail on his consumer fraud claim, Scott is not entitled to an award of attorney fees under Minn. Stat. § 8.31, subd. 3(a) (1998).

In addition, Forest Lake Chrysler requests that this court strike from the appendix to Scott's brief documents regarding the complaint Scott filed with the Commerce Department. Forest Lake Chrysler alleges that those documents were not filed in the district court. *See* Minn. R. Civ.App. P. 110.01 (papers filed in the district court, the exhibits, and the transcript, if any, shall constitute the record on appeal). Scott has not provided a citation to the record for any of the documents, and we did not discover any of them in our independent review of the record. We grant Forest Lake Chrysler's motion to strike.

## DECISION

We reverse the summary judgment in favor of Forest Lake Chrysler on Scott's claims that Forest Lake Chrysler violated Minn.Stat. § 168.71(a)(1) by using a separate conditional delivery agreement and by failing to provide him with copies of the retail installment contracts that were signed by Forest Lake Chrysler, and we remand those claims to the district court. We affirm the summary judgment in favor of Forest Lake Chrysler on Scott's consumer fraud claim. We grant Forest Lake Chrysler's motion to strike.

**Affirmed in part, reversed in part, and remanded; motion to strike granted.**

SHORT, Judge (concurring in part, dissenting in part)

I concur the trial court properly granted summary judgment in the dealership's favor on the consumer fraud claim. But I respectfully dissent because the trial court properly dismissed Scott's "non-signature" and "agreement of the parties" claims under the Minnesota Motor Vehicle Retail Installment Sales Act (MMVRISA), Minn. Stat. §§ 168.66–.77 (1998).

First, the absence of a dealership's signature on a carbon copy of an installment sales contract is insufficient to state a claim for statutory penalties under the MMVRISA. *See Sharlow v. Wally McCarthy's Pontiac–GMC Trucks–Hyundai, Inc.*, No. 97–20 (D. Minn., filed Aug. 13, 1998) (rejecting argument that seller violated MMVRISA simply by failing to sign agreement); *Patterson v. Bob Ryan Oldsmobile, Inc.*, No. 3–96–633 (D. Minn., filed Oct. 31, 1997) (holding absence of dealership's signature on customer's copy of retail installment contract does not frustrate MMVRISA), *aff'd*, 162 F.3d 1164, 1998 WL 372553 (8th Cir.1998); *Cullen v. Art Goebel, Inc.*, No. 4–96–160 (D. Minn., filed July 23, 1997) (recognizing legislature did not intend to authorize "non-signature" claims under Minn.Stat. § 168.71(a)(1)). *Cf. O'Brien v. Phillips Motors Excelsior, Inc.*, 288 Minn. 183, 186, 189–90, 179 N.W.2d 158, 160–62 (1970) (affirming trial court's judgment in favor of buyer in "non-signature" claim because seller did not furnish customer with copy of installment sales contract). Scott admits that he received copies of both installment contracts, which contained credit disclosures, and that he suffered no damage as a result of the absence of the dealership's signature on the carbon copies. Given these facts, Scott's "non-signature" claim fails as a matter of law.

Second, MMVRISA does not require that every understanding reached between a retail seller and consumer be incorporated into an installment sales contract. Rather, the statute merely prohibits dealers from relying on separate agreements that contain contradictory financing terms. *See* Minn.Stat. § 168.71(a)(1), (b)(1)-(7) (requiring installment contracts to contain all of parties' agreements, but defining contents of installment contracts only as agreements involving costs and financing); *O'Brien*, 288 Minn. at 185, 179 N.W.2d at 159–60 (noting plain purpose of Minn.Stat. § 168.71(a)(1) is to inform buyer of cost of credit extended to him/her). Because the conditional delivery agreement did not alter the credit terms that were disclosed in the installment sales contracts, Scott's "agreement of the parties" claim also fails as a matter of law. Under these circumstances, the trial court properly dismissed Scott's claims under MMVRISA. I would affirm the trial court's decision in all respects.