Raymond SCOTT, Appellant,

v.

**FOREST LAKE CHRYSLER–
PLYMOUTH DODGE,
Respondent.**

No. C3–01–1013.

Court of Appeals of Minnesota.

Jan. 2, 2002.

Thomas J. Lyons, Jr., Consumer Justice Center, P.A.; and Thomas J. Lyons, Thomas J. Lyons Associates, P.A., Little Canada, MN, for appellant.

Gregory J. Johnson, Klay C. Ahrens, Johnson Van Vliet, L.L.P., St. Paul, MN, for respondent.

Considered and decided by SCHUMACHER, Presiding Judge, HARTEN, Judge, and FORSBERG, Judge.*

## OPINION

### ROBERT H. SCHUMACHER, Judge.

Appellant Raymond Scott challenges the district court's order granting summary judgment in favor of respondent Forest Lake Chrysler Plymouth Dodge (FLC). Scott contends that (1) the six-year statute of limitations applies to his claims; (2) FLC cannot claim a "statutory-cure defense" to the requirements of Minn.Stat. § 168.71(a)(1) (1996); (3) a de minimis exception to the requirements of Minn.Stat. § 168.71(a)(1) does not exist; and (4) the district court's finding that FLC unintentionally violated Minn.Stat. § 168.71(a)(1) was clearly erroneous. We affirm in part, reverse in part, and remand.

## FACTS

On August 11, 1994, Scott visited FLC to purchase a 1991 Dodge Caravan. Scott requested that FLC arrange financing and executed a retail installment contract (contract I) that identified all of the financing terms and Comerica Bank as the intended lending institution. FLC delivered the vehicle to Scott subject to approval of the financing terms set forth in contract I. In addition to contract I, Scott executed a "conditional delivery agreement" wherein he acknowledged that, if financing was not approved, contract I would be null and void.

Comerica Bank did not approve the financing. Consequently, Scott executed a second retail installment contract (contract II) on August 23, 1994, and financing was arranged with Chrysler Credit. Contract II contained all of the credit disclosures required by the Minnesota Motor Vehicle Retail Installment Sales Act (MMVRISA).

On November 24, 1995, Scott returned to FLC to purchase a new 1995 Dodge Caravan and traded the 1991 Caravan as part of the transaction. He again executed a retail installment contract (contract III) containing all of the credit disclosures required by MMVRISA. The installment contract was paid off in September of 1998. There is nothing due or owing under either contract II or contract III.

During the time of Scott's purchases, FLC sold in excess of 1,500 new and used vehicles per year. A large number of the sales were financed by the customer by having FLC arrange for financing with a lending institution that purchases the retail installment contract. The lending institutions would furnish FLC with formal installment contracts to be used by FLC when arranging financing.

At the time of Scott's purchases, only certain persons employed by FLC had authority to sign retail installment contracts and to assign the contract to the lending institutions. Because those persons were not always available to sign the contracts, FLC's general practice was to furnish the customer with a carbon copy of the contract that had been signed by the customer at the time the vehicle was delivered. The original contract was then forwarded to the office of an authorized dealership signer for execution upon financing approval by the lender. The fully executed original

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

was then forwarded to the lender, and the dealership maintained a carbon copy in its file.

In the winter of 1995–96, lawsuits were threatened and commenced against local automobile dealerships by customers who had defaulted on their loans. These customers alleged that because their carbon copy of the retail installment contract did not bear the signature of the relevant dealership, the lender was not legally entitled to repossess the vehicle and the customer was consequently entitled to keep the vehicle and collect statutory penalties and attorney fees under MMVRISA.

In 1996, the Minnesota legislature amended Minn.Stat. § 168.71(a)(1) by enacting a provision allowing dealerships to cure whatever statutory liability they may have had under the pre-amended statute for not providing customers with signed copies of retail installment contracts. The amended statute provided a 120–day grace period during which dealerships could provide buyers a copy of the contract signed by the dealership.

Prior to the commencement of this case and in accordance with a district court ruling in a similar case, FLC sent Scott's attorney a certified letter inquiring whether any of his clients, including Scott, would like to receive a copy of the retail installment contract that had been signed by the dealership. The letter stated in part:

> If any of your clients purchased a motor vehicle for personal, household or family use from one of my clients prior to August 1, 1996 and financed the purchase under a retail installment sales contract which has not yet been paid off and would like to obtain a copy signed by the dealership, please fill out the enclosed request form with respect to each customer within the next thirty (30) days. After all of the forms are com-

pleted, please contact me and I will send a messenger over to pick them up.

Scott's attorney did not respond to the letter. Instead, in July of 1997, Scott sued FLC in federal district court. The federal court declined to exercise jurisdiction over Scott's state-law claims. Consequently, Scott refiled the suit in state court. In his complaint, Scott alleged that FLC violated MMVRISA by using a conditional-delivery agreement (conditional-delivery issue) and by failing to provide him with copies of retail installment contracts signed by FLC (non-signature issue). In addition, Scott alleged that FLC violated the Minnesota Prevention of Consumer Fraud Act. The district court granted summary judgment on all claims in favor of FLC. Scott appealed.

This court reversed and remanded the district court's decision with respect to the conditional-delivery issue as well as the non-signature issue. *Scott v. Forest Lake Chrysler–Plymouth Dodge,* 598 N.W.2d 713, 720 (Minn.App.1999) (*Scott I* ). Regarding the non-signature issue, we specifically remanded the question of whether FLC's violation of section 168.71(a)(1) was intentional or unintentional. We also affirmed the district court's decision regarding the consumer fraud claim. *Id.*

The Minnesota Supreme Court specifically denied review of the non-signature issue and granted review of the conditional-delivery issue. *Scott v. Forest Lake Chrysler–Plymouth Dodge,* No. C4–99–161 (Minn. Nov. 17, 1999) (unpublished order granting review in part and denying review in part). The supreme court reversed this court on the conditional-delivery issue. *Scott v. Forest Lake Chrysler–Plymouth Dodge,* 611 N.W.2d 346, 352 (Minn.2000) (*Scott II* ).

After the supreme court decision, the issue of intentionality, in accordance with this court's remand, remained before the

district court. FLC, however, moved for summary judgment on other previously unconsidered issues. The district court granted summary judgment in favor of FLC, finding that (1) Scott's non-signature claim was barred by the two-year statute of limitations; (2) Scott's non-signature claim was barred by the statutory-cure provision because FLC took reasonable steps to comply with the provision; (3) any statutory violation was unintentional and precipitated by Scott's actions; and (4) any violation was de minimis.

Scott appealed and the matter is again before this court. Both parties concede that because of the Minnesota Supreme Court's decision in *Scott II*, any claims regarding contract I are eliminated. Consequently, we are only asked to consider Scott's non-signature claims regarding contract II and contract III. Additionally, FLC requests that we strike portions of Scott's brief and appendix.

### ISSUES

1. Does the two-year statute of limitation found in Minn.Stat. § 541.07(2) (1994) apply to non-signature claims arising under MMVRISA?

2. Does a statutory-cure defense to the requirements of Minn.Stat. § 168.71(a)(1) (1996) exist?

3. Does a de minimis exception to the requirements of Minn.Stat. § 168.71(a)(1) exist?

4. Was the district court's finding that FLC unintentionally violated Minn.Stat. § 168.71(a)(1) clearly erroneous?

5. Should FLC's request to strike portions of Scott's brief and appendix be granted?

### ANALYSIS

■ This is an appeal from summary judgment. Summary judgment is proper-ly granted when the pleadings, depositions, affidavits, etc. "show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citation omitted). On appeal from summary judgment, this court asks two questions: "(1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990) (citation omitted). The evidence is viewed "in the light most favorable to the party against whom judgment was granted." *Fabio*, 504 N.W.2d at 761 (citation omitted). The application of law to stipulated facts is a question of law, which this court reviews de novo. *Morton Bldgs., Inc. v. Comm'r of Revenue*, 488 N.W.2d 254, 257 (Minn.1992). Both parties concede that there are no genuine issues of material fact. Therefore, our examination is limited to whether the district court properly applied the law to the undisputed facts.

1. Scott contends that a six-year statute of limitation applies to his non-signature claim. The district court found that the governing statute of limitations period is two years. Scott concedes that his claim regarding contract II was brought more than two years after the execution of that contract. If we find that the two-year limitation applies, Scott's claims regarding contract II will be eliminated. The parties concede, however, that contract III was brought within the two-year time period, therefore Scott's claims regarding that contract will still remain.

MMVRISA does not contain its own statute of limitations. Consequently, the applicable limitation period is either the two-year limitation found in Minn.Stat. § 541.07(2) (1994) or the six-year limitation found in Minn.Stat. § 541.05, subd. 1(2)

(1994). There is no Minnesota appellate case law regarding which of these two statutes applies to non-signature claims under MMVRISA.

The relevant provisions of MMVRISA for purposes of determining which statute of limitations applies to Scott's claims are the statute's liability provisions found in section 168.75. At the time contract II was executed, the statute provided:

(b) In case of an intentional failure to comply with any provision of sections 168.66 to 168.77, the buyer shall have a right to recover from the person committing such violation, to set off or counterclaim in any action by such person to enforce such contract an amount as liquidated damages, the whole of the contract due and payable, plus reasonable attorneys' fees.

(c) In case of a failure to comply with any provision of sections 168.66 to 168.77, other than an intentional failure, the buyer shall have a right to recover from the person committing such violation, to set off or counterclaim in any action by such person to enforce such contract an amount as liquidated damages equal to three times the amount of any time price differential charged in excess of the amount authorized by sections 168.66 to 168.77 or $50, whichever is greater, plus reasonable attorneys' fees.

Minn.Stat. § 168.75(b)-(c) (1994). These provisions have not been amended.

This issue turns on the nature of the MMVRISA liability provisions. A two-year limitations period will apply if the provisions provide for a penalty or forfeiture. Minn.Stat. § 541.07(2). Otherwise, a six-year limitation period will apply. Minn.Stat. § 541.05, subd. 1(2). Scott argues that the district court erroneously ignored the plain wording of the MMVRI-SA liability provisions by determining that the provisions provided for a penalty.

When the words of a statute are clear and unambiguous, a court must give effect to the plain meaning of the language. *Tuma v. Comm'r of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn.1986). A court may look beyond a statute's plain language, however, when a party demonstrates the statute's plain language violates a clearly expressed goal of the legislature. *Anker v. Little*, 541 N.W.2d 333, 337 (Minn.App.1995), *review denied* (Minn. Feb. 9, 1996). Though the liability provisions clearly speak in terms of liquidated damages, there are several indications that the statute imposes a penalty.

First, the Minnesota Supreme Court has noted that one of MMVRISA's several purposes was to prescribe penalties for violations of its provisions:

Undoubtedly the Motor Vehicle Retail Installment Sales Act was enacted by the 1957 legislature to protect the purchasers of automobiles from the activities of a few individuals who had been guilty of inequitable practices in particular situations. It thereby sought to regulate the credit charge for the purchase of an automobile over a contractually specified period of time. The usury laws did not protect a person purchasing an automobile on a retail installment contract, commonly referred to as a conditional sales contract, inasmuch as the courts had long since come to recognize the right of a merchant to sell at one price for cash and at another price if payments were to be made on an installment basis. Our legislature stated in the title to the foregoing act the purposes thereof as follows:

"An act defining and regulating certain installment sales of motor vehicles; prescribing the conditions under which such sales may be made and regulating

the financing thereof; regulating and licensing persons engaged in the business of financing such sales; prescribing the form, and contents used in connection with such sales and the financing thereof; prescribing certain rights and obligations of buyers, sellers, persons financing such sales and others; limiting incidental charges in connection with such instruments and fixing maximum charges for delinquencies, extensions and time sale differentials; authorizing investigations and examinations of persons engaged in the business of making or financing such sales; *prescribing penalties for violations,* and providing for enforcement of compliance by injunction."

*Van Asperen v. Darling Olds, Inc.,* 254 Minn. 62, 70–71, 93 N.W.2d 690, 696–97 (1958) (emphasis added).

Second, while Minnesota appellate courts have not determined the statute of limitations issue at hand, the Minnesota Supreme Court, when determining the constitutionality of MMVRISA's liability provisions, characterized MMVRISA, in dictum, as a penalty-providing statute:

Defendant contends that Minn. St. 168.75(c) was not intended to authorize a penalty of liquidated damages, plus attorneys' fees, for the retail seller's unintentional failure to furnish his buyer with a copy of the retail installment sales contract, absent proof of prejudice or damage to the buyer, and that the imposition of so severe a penalty for a "totally innocent act" is so shockingly unreasonable and unfair as to deprive it of property without due process of law.

The statute, we hold, is unambiguous in its expression of legislative intent. Minn. St. 168.75(b) clearly refers to intentional failure to comply, with severe penalties for such violation, whereas § 168.75(c) just as clearly provides for

nonintentional violations, but with substantially lesser penalties. Prejudice to the automobile buyer in being denied the written disclosure of his finance costs is presumed, and such prejudice is not affected by the motivation of the seller. Judge Fosseen expressed the obvious legislative intent in these words:

"Only a law providing for penalties in failure to furnish the buyer of an automobile with a copy of the installment contract would compel compliance. To require a showing of wilfullness or damages in order to authorize a recovery would invite non-compliance on the part of the seller. Many automobile dealers would consider it a good business risk to withhold the contract, rendering the act ineffectual."

The statute, we hold, does not violate either the Constitution of Minnesota or the Constitution of the United States. It is well settled that penalties, including attorneys' fees, imposed by statute must be moderate and reasonably sufficient to accomplish a proper legislative purpose and that the imposition of penalties or conditions that are plainly arbitrary and oppressive violate due process. It is equally well settled, however, that the states possess a wide latitude of discretion in prescribing penalties for violation of their laws.

*O'Brien v. Phillips Motors Excelsior, Inc.,* 288 Minn. 183, 186–87, 179 N.W.2d 158, 160–61 (1970) (quotation and citations omitted).

Third, the language of the liability provisions fits the definition of a penalty for statute of limitations purposes. Scott argues that this court should adopt the test used by the Ohio Supreme Court in determining whether a statute provides for a penalty. *See Cosgrove v. Williamsburg of Cincinnati Mgmt. Co., Inc.,* 70 Ohio St.3d 281, 638 N.E.2d 991, 996 (1994) (stating

that three factors are considered in determining whether statute is penal or remedial: (1) whether statute redresses individual wrongs or wrongs to public; (2) whether recovery runs to individual or to public; and (3) whether authorized recovery is unrelated to harm suffered). Minnesota, however, already has a test for determining such issues.

The Minnesota Supreme Court held that Minn.Stat. § 181.75, subd. 4 (1986) constitutes a non-penalty-type statute, subject to the six-year limitation period, because the statute does not impose liability apart from actual damages. *Freeman v. Q Petroleum Corp.*, 417 N.W.2d 617, 619 (Minn.1988). The court stated:

> The plain language of the applicable statutes shows that the relevant inquiry is whether the liability created by the statute is or is not in the nature of a penalty. We believe it is not. Freeman is suing for his actual losses in this case as authorized by the statute. Unlike the penalty cases cited, his recovery is inextricably tied to his actual loss. If his recovery were a fixed amount arising solely from a violation, it would more closely resemble a penalty. However, here he can only recover if he can prove damages. Consequently, we hold that the trial court erred in its application of the statute of limitations

*Id.*

Similarly, this court, following *Freeman*, held that the Consumer Fraud Law is subject to the six-year statute of limitations because it does not impose an arbitrary monetary penalty but, rather, allows recovery only by persons injured by a violation. *Estate of Riedel by Mirick v. Life Care Ret. Communities, Inc.*, 505 N.W.2d 78, 82 (Minn.App.1993).

> A statute is considered penal for limitations purposes if it punishes an offense against the public rather than redresses a private wrong. A statute is for a penalty where liability is imposed as a consequence of a violation of the law, even though the injured party has not suffered any real loss. Penalty embraces something other than damages or pecuniary loss. Courts also consider whether the statutory liability is measured by or related to the injury.

*Id.* (quotations and citations omitted).

Unlike *Freeman* and *Riedel*, liability here is not dependent on or measured by actual, sustained damages. Instead, liability is imposed solely as a consequence of violating MMVRISA. This liability is imposed whether or not a person has suffered any actual, substantive loss as a result of a violation. Consequently, the liability provisions embrace something other than damages or pecuniary loss. Also, while recovery under the provisions run to the individual, the Minnesota Supreme Court has characterized MMVRISA as protecting a public interest. *See O'Brien*, 288 Minn. at 187, 179 N.W.2d at 161 ("public interest in compelling undeviating compliance with the simple act of giving the automobile buyer a copy of his retail installment contract, as a matter of consumer protection, is manifest").

Furthermore, other jurisdictions with statutes similar to MMVRISA have found the liability imposed to be penal in nature. *See, e.g., Stone v. James*, 142 Cal.App.2d 738, 299 P.2d 305, 306–07 (1956) (holding that liability provisions allowing buyer to recover from seller total amount paid on contract balance to be "clearly those of a section enforcing a penalty or forfeiture"); *Young v. S.S. Wilder*, 77 So.2d 604, 605–06 (Fla.1955) (holding that statute requiring person who willfully violated statute to lose claim to interest charged to be penal in nature); *Lynch v. Signal Fin. Co. of Quincy*, 367 Mass. 503, 327 N.E.2d 732, 734 (1975) (finding one-year statute of limita-

tions applicable to liability provision because provision did not require actual harm and damages were not proportional to harm).

It cannot be denied that the language of the statute clearly classifies liability in terms of liquidated damages. The above factors considered in their totality, however, demonstrate that the liability provisions, despite their language, provide for a penalty. We conclude that a two-year statute of limitations applies to Scott's non-signature claim.

Scott argues that such a conclusion is absurd and contrary to the purposes of consumer protection because financing agreements normally encompass a time period greater than two years. Thus, circumstances could arise where a consumer, who is still bound to fulfill the obligations of a contract, is no longer able to seek a judicial remedy.

Scott's argument in the context of his claim lacks merit. His claim is based on not receiving a contract signed by the dealership. One knows or reasonably should know within a week of the purchase whether or not he or she has a contract signed by the dealership. The length of the financing agreement is irrelevant. Two years gives a potential plaintiff more than enough time in which to bring a non-signature claim.

2. Scott also contends that FLC cannot claim a "statutory-cure defense" because it failed to provide Scott a copy of the retail installment contract signed by the dealership. The district court found as follows:

> This Court finds [FLC's] efforts to comply with the statutory cure provision and the Order for Declaratory Relief to be reasonable. The Court further finds [Scott's] failure to reply to the April 2, 1997 letter to be unreasonable.

Essentially, the district court found that, because FLC provided a letter to Scott's attorney stating that he could request a signed copy and such a request was never made, FLC complied with the terms of the statute. The statutory-cure provision reads as follows:

> With respect to any contract executed prior to August 1, 1996, which has not been paid in full by the retail buyer, the retail seller shall provide such retail buyer a copy signed by both the retail buyer and retail seller within 120 days after August 1, 1996.

Minn.Stat. § 168.71(a)(1) (1996).

The plain language of the statute clearly states that the dealership must provide a signed copy to the buyer. There is no language indicating that sending a letter to consumers allowing them to request a copy complies with the statute. The district court's finding that FLC's efforts to comply were reasonable is contrary to the terms of the statute. It is also clearly inconsistent with our previous decision in *Scott I.* There, we stated:

> In construing the requirement in Minn.Stat. § 168.71(a)(1) that a buyer shall be furnished with a copy of the retail installment contract, the supreme court stated that the purpose of the provision is to inform the installment buyer of the cost of the credit extended to him. The [supreme] court also indicated that the overall purpose of the MMVRISA is broader, reflecting a legislative policy to bring both regulatory control and conformity into the field of automobile financing and to protect the purchasers of automobiles from the activities of a few individuals who had been guilty of inequitable practices in particular situations.
>
> The signature requirement does not conflict with any of the legislative goals recognized [by the supreme court], and

we find no authority indicating any other legislative goals with which the signature requirement conflicts. Although a dealership's signature on a retail installment contract may not be necessary to further the MMVRISA's purposes, Forest Lake Chrysler has produced no evidence and cites no authority indicating that enforcing the plain language of the signature requirement violates a clearly expressed legislative goal.

\* \* \* \*

\* \* \* By retaining the signature requirement when it amended the statute, but giving sellers 120 days to provide buyers with signed copies of previously executed contracts, the legislature, if anything, demonstrated that it considers the signature requirement to be significant. The 1996 amendment provides no basis for us to conclude that enforcing the signature requirement violates a clearly expressed legislative goal.

This is not one of those rare cases in which it is appropriate for this court to depart from a statute's unambiguous language. We hold that Forest Lake Chrysler violated Minn.Stat. § 168.71(a)(1) by failing to provide Scott with copies of the retail installment contracts that were signed by Forest Lake Chrysler.

*Scott I,* 598 N.W.2d at 718–19 (quotations and citation omitted). This court's previous decision clearly states that the unambiguous language of the statute must be followed. The statutory-cure defense is not applicable in this case.

Moreover, finding that FLC's efforts to comply were reasonable violated the law of the case. *See Mattson v. Underwriters at Lloyds of London,* 414 N.W.2d 717, 720 (Minn.1987) (issues determined on appeal "will not be relitigated in the trial court nor re-examined in a second appeal"); *McClelland v. McClelland,* 393 N.W.2d

224, 226 (Minn.App.1986) (appellate court decision on given issue establishes law of case that must be followed on remand to district court), *review denied* (Minn. Nov. 17, 1986).

3. Scott additionally contends that the district court erroneously found that FLC's violation of MMVRISA was de minimis because such a de minimis exception does not exist for purposes of the statute. The district court found:

The plain purpose of [the signature requirement] is to inform the installment buyer of the cost of the credit extended to him. Here, [Scott] was fully informed of the cost of the credit to him. In fact, [Scott] took delivery of two vehicles, drove them, paid for them in installments over a total period of five years or more and may still be driving one of them, all without having possession of a copy signed by [FLC]. Since the vehicle is generally delivered on day one of these transactions, there is very little, if anything, left for [FLC] to do to perform as of that day. The performance under the RIC is [Scott's] obligation from that point forward and he has in his possession the document outlining the details. [Scott] claims to have suffered damage due to [FLC's] failure to provide him with RICs signed by both parties. However, this Court, as diligently as it has tried, cannot discern any harm suffered by [Scott] by virtue of that failure. Here, the signature requirement amounts to a technicality with no negative consequence to [Scott] for non-conformity by [FLC]. The violation, if any, was de minimis.

(Quotation omitted.)

Minnesota courts have recognized the de minimis exception in certain cases, stating that the law does not take notice of trifling matters. *See Wibbens v. Wibbens,* 379 N.W.2d 225, 227 (Minn.App.1985) (refusing

to remand for de minimis technical error); *see also* Minn. R. Civ. P. 61 (harmless error to be ignored). Minnesota courts, however, have also declined to invoke the de minimis exception in cases involving statutory interpretation. In *Flaherty v. Indep. Sch. Dist. No. 2144, Chisago Lakes Area Sch.*, 577 N.W.2d 229 (Minn.App. 1998), *review denied* (Minn. June 17, 1998), this court stated:

> But the legislature has authorized courts to add language to a statute only where it does not in any way affect the statute's scope and operation. The courts also have imposed on themselves a prohibition against supplying what the legislature purposely omits or inadvertently overlooks. Because the statute plainly does not require that employment be full-time and provides no minimum requirement for a "year" of probationary employment, we conclude that we have no authority to amend the statute judicially by creating a "de minimis" exception to the requirements of section 125.12, subdivision 3. Such an amendment is properly a legislative function.

*Id.* at 235 (quotations omitted).

■ The statute here is clear and unambiguous. It specifically requires the dealership to provide a signed contract to the buyer. It does not contain language allowing for anything less. Reading a de minimis exception into the statute would be inconsistent with our decision in *Scott I* and would violate the law of the case.

■ 4. Scott further contends that the district court's finding that FLC's violation was unintentional was clearly erroneous. The district court found that the violation was unintentional because it was precipitated by Scott's failure to request a copy of the signed contract after a letter was sent to Scott's counsel stating that a copy would be submitted upon request. A district court's finding on the issue of whether a violation of Minn.Stat. § 168.71(a)(1) was intentional or unintentional will not be set aside unless clearly erroneous. *Kadlec Motors, Inc. v. Knudson*, 383 N.W.2d 342, 348 (Minn.App.1986). A finding is clearly erroneous if it is demonstrated "that it is without substantial evidentiary support or that it was induced by an erroneous view of the law." *Pettibone Minn. Corp. v. Castle*, 311 Minn. 513, 247 N.W.2d 52, 53 (1976) (citation omitted).

We reaffirm here that the statute requires the signed contract be given to the buyer even without a request for it. The law does not allow FLC to fulfill its responsibility by simply taking the position that the contract will be sent upon request. Instead, the law simply states that the contract shall be provided to the buyer. Because the district court's finding is based on an erroneous interpretation of the statute's requirements, the finding that the violation was unintentional is clearly erroneous.

Additionally, the record indicates that the parties did not have an opportunity to fully and fairly address the intentionality issue because the issue was not argued or discussed either in writing or orally during the summary judgment proceedings. Therefore, as in *Scott I*, we again remand the issue of intentionality to the district court for further proceedings on that issue:

> Whether Forest Lake Chrysler violated Minn.Stat. § 168.71(a)(1) intentionally or unintentionally and the amount of damages are fact questions that must be resolved by the district court.

*Scott I*, 598 N.W.2d at 719.

■ 5. Finally, FLC requests that parts of Scott's brief and appendix be stricken because they refer to events and claims that are not a part of the district court record. This court granted a similar request in *Scott I*:

In addition, Forest Lake Chrysler requests that this court strike from the appendix to Scott's brief documents regarding the complaint Scott filed with the Commerce Department. Forest Lake Chrysler alleges that those documents were not filed in the district court. Scott has not provided a citation to the record for any of the documents, and we did not discover any of them in our independent review of the record. We grant Forest Lake Chrysler's motion to strike.

*Scott I*, 598 N.W.2d at 720 (citation omitted). Because Scott still has not provided this court with a citation to the record, we again grant FLC's request to strike.

## DECISION

The two-year statute of limitations found in Minn.Stat. § 541.07(2) (1994) applies to non-signature claims arising under the Minnesota Motor Vehicle Retail Installment Sales Act. Additionally, the clear language of Minn.Stat. § 168.71(a)(1) (1996) does not allow for a "statutory-cure" defense or a de minimis exception. Further, the district court erred by finding that FLC unintentionally violated Minn.Stat. § 168.71(a)(1) because it was induced by an erroneous view of the law. Accordingly, we affirm the district court's decision regarding the two-year statute of limitations but reverse regarding all other issues. The issue of whether FLC's violation of Minn.Stat. § 168.71(a)(1) is intentional or unintentional is again remanded to the district court.

**Affirmed in part, reversed in part, and remanded.**