Sol **ANKER,** as duly appointed Trustee for the heirs and next of kin of Harriette Rolnick, Decedent, Appellant,

v.

Kent Eugene **LITTLE,** et al., Defendants.

Kent Eugene **LITTLE,** et al., Third–Party Plaintiffs,

v.

**FORD MOTOR COMPANY,** Third-Party Defendant, Respondent.

No. C4–95–1575.

Court of Appeals of Minnesota.

Dec. 19, 1995.

Review Denied Feb. 9, 1996.

Mark N. Stageberg, Minnetonka, for Appellant.

Wendy F. Lumish, pro hac vice, Sheila T. Kerwin, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for Respondent.

Mark S. Olson, Paula D. Osborn, Erika S. Koster, Oppenheimer Wolff & Donnelly, Minneapolis, for Amicus Curiae, Product Liability Advisory Council, Inc.

Considered and decided by SHORT, P.J., TOUSSAINT, C.J., and PETERSON, J.

## OPINION

SHORT, Judge.

On appeal from a grant of summary judgment, Sol Anker argues the trial court erred by construing Minn.Stat. § 169.685, subd. 4 to apply to crashworthiness actions, and that this application of the statute violates his rights under the Minnesota and United States Constitutions.

## FACTS

On December 30, 1993, Sol Anker and his wife were passengers in a rented Ford Tempo. While a friend drove the automobile, Anker sat in the right rear passenger's seat and his wife sat in the front passenger's seat. Anker's wife wore an automatic shoulder belt, but had not engaged the manually-operated lap belt. The Tempo collided with a garbage truck that crossed the highway in

front of it. As a consequence of the accident, Anker's wife sustained fatal injuries.

As trustee for his wife's heirs, Anker filed a wrongful death negligence action against the Tempo's driver, the truck driver, the truck driver's employer, and the rental car company. The truck driver and his employer filed a third-party complaint against Ford Motor Company, alleging its design of the Tempo's seat belt restraint system rendered the automobile uncrashworthy. Anker subsequently filed an identical complaint against Ford.

Ford moved for summary judgment claiming Minn.Stat. § 169.685, subd. 4 prohibits the introduction of evidence of seat belt use or nonuse in any litigation involving personal injury, thus rendering Anker unable to prove that his wife's failure to use the lap belt caused her death. The trial court granted Ford's motion. Later, Anker settled with the remaining parties for $680,000.

## ISSUES

I. Does Minn.Stat. § 169.685, subd. 4 apply to crashworthiness actions?

II. Does application of Minn.Stat. § 169.685, subd. 4 to crashworthiness actions violate the Minnesota and United States Constitutions?

## ANALYSIS

■ The interpretation and constitutionality of statutes are questions of law, which we review de novo. *Estate of Jones v. Kvamme,* 529 N.W.2d 335, 337 (Minn.1995) (holding a statute's constitutionality presents a question of law, which appellate courts evaluate de novo); *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985) (holding statutory construction involves a question of law and is independently reviewed by appellate courts). This case requires us to decide whether Minn. Stat. § 169.685, subd. 4 (1994) applies to crashworthiness actions and, if so, whether such application violates a plaintiff's state and federal constitutional rights to redress for injuries, equal protection, or due process.

I.

■ When interpreting statutes, our function is to ascertain and effectuate the intention of the legislature. Minn.Stat. § 645.16 (1994). If the statute is free from ambiguity, we look only at its plain language. *Id.; Tuma v. Commissioner of Economic Sec.,* 386 N.W.2d 702, 706 (Minn.1986). However, if the statute's literal meaning leads to an absurd result that utterly departs from the legislature's purpose, we may look beyond the language and examine other indicia of legislative intent. *Wegener v. Commissioner of Revenue,* 505 N.W.2d 612, 617 (Minn.1993); *Kay v. Fairview Riverside Hosp.,* 531 N.W.2d 517, 521 (Minn.App.1995), review denied (Minn. July 20, 1995). If, by contrast, the statute's unambiguous language merely produces a troubling result, we must apply it without reference to its drafting history. *See R.B. Thompson, Jr. Lumber Co. v. Windsor Dev. Corp.,* 383 N.W.2d 362, 366–67 (Minn.App.1986) (deciding the court must follow a statute's unambiguous language despite its propensity to create troubling results), review denied (Minn. May 21, 1995).

■ Minn.Stat. § 169.685, subd. 4 provides:

Proof of the use or failure to use seat belts or a child passenger restraint system as described in subdivision 5, or proof of the installation or failure of installation of seat belts or a child passenger restraint system as described in subdivision 5 shall not be admissible in evidence in any litigation involving personal injuries or property damage resulting from the use or operation of any motor vehicle.

This language is unambiguous in prohibiting the admission of evidence of the use or nonuse of seat belts in *any* litigation involving personal injury that results from the use or operation of a motor vehicle. *Swelbar v. Lahti,* 473 N.W.2d 77, 79 (Minn.App.1991); *Lind v. Slowinski,* 450 N.W.2d 353, 359 (Minn.App.1990) ("The specific intent of the legislature was to remove from jury consideration the use or nonuse of seat belts."), review denied (Minn. Feb. 21, 1990); *see also Wilson v. Volkswagen of Am., Inc.,* 445 F.Supp. 1368, 1374 (E.D.Va.1978) (contrast-

ing Virginia's seat belt gag rule, which applies only to issues of contributory negligence, with Minn.Stat. § 169.685, subd. 4, which precludes introduction of seat belt evidence for any purpose whatsoever); *Hickman v. Group Health Plan, Inc.*, 396 N.W.2d 10, 16 n. 1 (Minn.1986) (Simonett, J., concurring specially (joined by two other members of the majority) and construing Minn.Stat. § 169.865 (1984) to bar civil suits requiring proof of the failure to use a child restraint system).

Anker acknowledges the facts of this case fall within a mechanical application of the statute's broad language. However, he argues the legislature could not have intended to prevent injured passengers from bringing crashworthiness suits against manufacturers in cases requiring proof of the nonuse of seat belts. To persuade us to look beyond the statute's plain language, Anker argues the statute's location among traffic statutes creates an ambiguity, a literal reading of the statute yields an absurd result, and the national trend supports his position.

## A. *Statute's Location*

■ Anker argues the section's location among traffic statutes creates an ambiguity regarding the legislature's intent to destroy the ability to maintain crashworthiness suits that rely on seat belt evidence. *See Bridgestone/Firestone, Inc. v. Glyn–Jones*, 878 S.W.2d 132, 133–34 (Tex.1994) (finding a similar statute's context created an ambiguity because it was unlikely the legislature intended a traffic statute to abolish a class of crashworthiness actions). However, Anker suggests no other logical placement for this law. Tort doctrines are products of common law evolution and the legislature has not elected to codify all statutes bearing on tort liability in a single chapter of the Minnesota Statutes. Instead, the legislature aggregates statutes by the activity to be regulated, which in no way detracts from their effect on common law tort liability. *See Hickman*, 396 N.W.2d at 16 n. 1 (Simonett, J., concurring specially (joined by two other members of the majority) and declaring that Minn. Stat. § 169.865, located amongst traffic statutes, bars civil suits requiring proof of the failure to use a child restraint system); *see*

*also* Minn.Stat. § 169.96 (1994) (treating infractions of traffic regulations as prima facie evidence of negligence); *cf. Hickman*, 396 N.W.2d at 12–15 (upholding the constitutionality of Minn.Stat. § 145.424 (1984), a statute prohibiting wrongful life and birth actions, and located amidst public health provisions (such as Minn.Stat. §§ 145.365 (1984) (trafficking in skunks), 145.425 (1984) (pay toilets in public places))). The gag rule's codification as a traffic statute creates no ambiguity and, thus, affords us no opportunity to look beyond its plain meaning.

## B. *Statute's Result*

■ Anker also argues that, by allowing manufacturers to escape liability for designing seat belts that cause injury, the statute's plain language produces an absurd result, utterly departing from its purpose. *See Glyn–Jones v. Bridgestone/Firestone, Inc.*, 857 S.W.2d 640, 643–44 (Tex.Ct.App.1993) (finding this result "arbitrary and unreasonable" in light of the 1985 Texas statute's stated purpose of saving lives and promoting safety on the highway through mandatory seat belt use), *aff'd on other grounds*, 878 S.W.2d 132. While we have the power to engage in a broader inquiry under such circumstances, our judicial role requires us to exercise this authority sparingly and only when a party demonstrates the statute's plain language violates a *clearly* expressed goal of the legislature. *See Wegener*, 505 N.W.2d at 617 (holding court has power to reject statute's plain language under such circumstances); *see also Consumer Prod. Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) ("Absent a clearly expressed legislative intention to the contrary, [the statute's plain] language must ordinarily be regarded as conclusive."); *Resolution Trust Corp. v. Westgate Partners*, 937 F.2d 526, 531 (10th Cir.1991) (determining courts must exercise the power sparingly and that the party requesting a broader inquiry had not met its burden of proof).

■ In support of his argument, Anker speculates that when the legislature enacted the gag rule in 1963 as part of a measure

requiring manufacturers to install seat belts, it intended nothing more than the protection of plaintiffs from charges of contributory negligence. While we agree the gag rule typically serves this purpose,[1] Anker points to no evidence demonstrating a clear legislative intention that the statute not permit manufacturers to make similar use of its unqualified and plain language. One could speculate with equal force that the legislature simultaneously imposed a duty to install novel safety devices and, in exchange, extended a measure of protection to automobile manufacturers; because, well after the bill's passage, reputable studies continued to suggest that seat belt use could *exacerbate* injuries. *See, e.g., Romankewiz v. Black,* 16 Mich.App. 119, 167 N.W.2d 606, 609 & n. 6 (1969) (citing studies); Janice K. O'Grady, *Minnesota's Seat Belt Evidence Gag Rule: Antiquated and Unfair in Crashworthiness Cases,* 15 Wm. Mitchell L.Rev. 353, 362 (1989) (citing *Romankewiz);* Case Comment, 52 Minn.L.Rev. 918, 921 & nn. 17–19 (1968) (citing studies). Anker has not shown that application of the gag rule's plain language to crashworthiness actions creates an absurd result which utterly confounds a clear purpose. While we may find the result somewhat troubling in light of modern notions regarding products liability and the utility of seat belts, our function is not to second guess, but to give effect to, the legislature's will. *See R.B. Thompson, Jr. Lumber Co.,* 383 N.W.2d at 366–67 (deciding the court must follow a statute's unambiguous language despite its propensity to create troubling results).

### C. *National Trend*

◼ Anker further argues we should follow the "national trend" of admitting seat belt evidence in crashworthiness actions. However, the bulk of that trend consists of cases recognizing that *common law* principles do not prohibit the introduction of seat belt evidence in crashworthiness actions. *See, e.g., Daly v. General Motors Corp.,* 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162, 1174–75 (1978) (analyzing the admissibility of seat belt evidence in the absence of a gag rule); *Seward v. Griffin,* 116 Ill.App.3d 749, 72 Ill.Dec. 305, 316, 452 N.E.2d 558, 569 (1983) (same); *McElroy v. Allstate Ins. Co.,* 420 So.2d 214, 216–17 (La.Ct.App.) (same), *writ denied,* 422 So.2d 165 (La.1982); *Lowe v. Estate Motors Ltd.,* 428 Mich. 439, 410 N.W.2d 706, 721 (1987) (same); *Waterson v. General Motors Corp.,* 111 N.J. 238, 544 A.2d 357, 370, 372–73 (1988) (same); *Dahl v. Bayerische Motoren Werke,* 304 Or. 558, 748 P.2d 77, 81–83 (1987) (same); *Maskrey v. Volkswagenwerk Aktiengesellschaft,* 125 Wis.2d 145, 370 N.W.2d 815, 822 (Ct.App.1985) (following precedent regarding the admissibility of seat belt evidence in crashworthiness actions). However, we cannot defy the plain language of a statute, written in derogation of the common law, based on the reasoning of cases in which the legislature remained silent. *See Wilson,* 445 F.Supp. at 1374 (describing seat belt gag rules as written in derogation of the common law).

Anker cites two cases in which courts have admitted seat belt evidence despite the existence of statutes purporting to bar the introduction of information regarding seat belt use or nonuse. *See Bridgestone/Firestone,* 857 S.W.2d at 642–44 (declaring the statute unambiguous, but violative of the Texas Constitution because it facially and unreasonably conflicted with the 1985 statute's explicit goal of promoting safety on the highways through mandatory seat belt use), *aff'd on other grounds,* 878 S.W.2d at 133–34 (holding the statute's context created an ambiguity and disbelieving the legislature intended to affect tort doctrines by means of a traffic statute); *see also Califato v. Gerke,* 258 Mont. 68, 852 P.2d 121, 123 (1993) (holding the statute inapplicable to a case requiring evidence of seat belt installation, as opposed to use or nonuse). However, these cases are distinguishable. Unlike the plaintiff in *Bridgestone/Firestone,* Anker has not demonstrated the gag rule produces an absurd result that conflicts with a purpose clearly stated by the legislature at the time of adoption. *Cf. Cressy v. Grassmann,* 536 N.W.2d 39, 43 (Minn.

---

1. *See, e.g., Swelbar,* 473 N.W.2d at 79–80 (reversing a trial court's refusal to strike affirmative defenses based on decedent's failure to use child restraint system); *Lind,* 450 N.W.2d at 359 (upholding a trial court's refusal to admit evidence involving the plaintiff's failure to use a seat belt).

App.1995) (holding the gag rule is consistent with a later statute on mandatory seat belt use), *review denied* (Minn. Sept. 28, 1995). Nor has he convinced us that its placement in the midst of traffic statutes creates ambiguity regarding its effect. Also, unlike the plaintiff in *Califato,* Anker's case rises or falls on evidence the statute specifically excludes, the use or nonuse of seat belts. Under these circumstances, we cannot abandon an unambiguous legislative statement in order to "follow the pack." *See Badger Dome Oil Co. v. Hallam,* 99 F.2d 293, 298 (8th Cir.1938) (holding courts must follow plain legislative intent, even if in derogation of the common law). Unless and until the legislature chooses to limit the broad scope of the gag rule's plain language, we will construe it to apply to crashworthiness actions.

## II.

■ Anker argues that, if we construe the gag rule to defeat his crashworthiness action, we must declare the statute violative of Minn. Const. art. I, § 8, as well as the Equal Protection and Due Process Clauses of the Minnesota and United States Constitutions. We will uphold a statute unless a party proves it unconstitutional beyond a reasonable doubt. *Kvamme,* 529 N.W.2d at 337.

### A. *Minn. Const. Art. I, § 8*

Minn. Const. art I, § 8 provides:

> Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person, property or character, and to obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformable to the laws.

As Anker acknowledges, article I, section 8 does not guarantee redress for every wrong, but prohibits the legislature from eliminating remedies available at common law unless it does so to further legitimate objectives. *See Hickman,* 396 N.W.2d at 14 (holding Minn. Const. art. I, § 8 protects remedies only for causes of action that vested at common law); *see also Schweich v. Ziegler, Inc.,* 463 N.W.2d 722, 733 (Minn.1990) (recognizing the legislature may abrogate common law remedies to further legitimate objectives).

■ The gag rule does not violate Minn. Const. art. I, § 8. First, while the crashworthiness doctrine is a product of common law negligence, no court recognized the particular duty until 1968, five years after passage of the gag rule. *See Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 383–84 (8th Cir.1992) (describing the crashworthiness doctrine, recognized in 1968, as a label attached to manufacturers' negligence-based duty to produce reasonably safe automobiles). By acting in 1963, the legislature did not abrogate a vested remedy and, thus, did not violate Minn. Const. art. I, § 8. *See Hickman,* 396 N.W.2d at 12, 14–15 (holding the legislature's prohibition of wrongful life and birth actions, based on theories of negligence, did not violate Minn. Const. art. I, § 8 because those particular duties had not been recognized in Minnesota at common law).

Second, even if a remedy for crashworthiness had vested at common law, wrongful death actions did not vest at common law and are not protected by Minn. Const. art. I, § 8. *Ackerman v. American Family Mut. Ins. Co.,* 435 N.W.2d 835, 839 (Minn.App.1989). Because Anker's suit seeks no remedy other than for the wrongful death of his wife, the gag rule does not violate his rights under article I, section 8.

And third, even assuming the gag rule abrogated a common law right, Anker has not demonstrated beyond a reasonable doubt that the legislature lacked a legitimate reason for doing so. *See Kvamme,* 529 N.W.2d at 337 (requiring proof that the statute is unconstitutional beyond a reasonable doubt); *Schweich,* 463 N.W.2d at 733 (recognizing that the legislature may abrogate common law remedies to further legitimate objectives). While he asserts the legislature could not rationally choose to insulate manufacturers from liability for injuries caused by seat belt use, the legislature, in 1963, may reasonably have chosen not to simultaneously require manufacturers to install controversial safety devices and impose liability for injuries associated with their use.

340

### B. *Equal Protection*

■ Anker also argues the gag rule creates an irrational distinction by rendering the crashworthiness doctrine unavailable only to plaintiffs relying on seat belt evidence. *See Price v. Amdal,* 256 N.W.2d 461, 468 (Minn. 1977) (construing equal protection to require that distinctions have a reasonable basis). However, Anker's equal protection challenge fails because he has not proven beyond a reasonable doubt that the legislature's 1963 decision was something different than a balanced decision to temper the imposition of duty with a concession on liability. *See id.* (holding equal protection requires that distinctions have a reasonable basis); *see also Kvamme,* 529 N.W.2d at 337 (requiring courts to uphold a statute unless a party proves it unconstitutional beyond a reasonable doubt); *cf. Cressy,* 536 N.W.2d at 42–43 (holding, in another context, that the gag rule does not violate state or federal standards of equal protection).

### C. *Due Process*

■ Anker further argues the gag rule violates his due process right to present evidence. *See Juster Bros. v. Christgau,* 214 Minn. 108, 113–15, 117–120, 7 N.W.2d 501, 505, 507–08 (1943) (determining that regulations preventing a party from introducing evidence on ultimate issues violate the Due Process Clause). However, a party has no right to present evidence lacking relevance to a recognized cause of action. *See* Minn. R.Evid. 401 (providing that relevant evidence includes only that which makes the existence of any fact *of consequence to the determination of the action* more or less probable); *State v. Svoboda,* 331 N.W.2d 772, 775 (Minn. 1983) (holding that, while a party enjoys the right to present evidence, the proponent must first demonstrate its relevance and admissibility); *Juster Bros.,* 214 Minn. at 120, 7 N.W.2d at 508 ("Facts * * * must not be considered which should not legally influence the conclusion.") (quoting *Morgan v. United States,* 298 U.S. 468, 480, 56 S.Ct. 906, 911, 80 L.Ed. 1288 (1936)). Because Anker acknowledges the gag rule's true effect is to destroy his right of action, he cannot complain about the exclusion of evidence pertaining to it; this information is not relevant to the development of facts surrounding a recognized cause of action. *Id.; cf. Cressy,* 536 N.W.2d at 43 (holding, in another context, that Minn.Stat. § 169.685, subd. 4 does not violate the right to present evidence).

### DECISION

Anker has demonstrated neither the ambiguity of the gag rule's language, nor that its effect absurdly and clearly contradicts its purpose. We follow the statute's literal meaning and hold it applicable to crashworthiness actions. This application of the gag rule does not violate Anker's rights under the Minnesota or United States Constitutions because: (1) Anker has demonstrated neither that it abrogates vested common law rights nor that it lacks a legitimate purpose; (2) Anker has not shown, beyond a reasonable doubt, that the statute serves no rational purpose; and (3) the statute extinguishes Anker's cause of action instead of suppressing his presentation of information material to judicial apportionment of liability. The trial court properly granted summary judgment in favor of Ford.

**Affirmed.**