Amy **MARSDEN** (Norby), mother and natural guardian for Riley Lin Marsden, a minor, Appellant,

v.

Katherine **CRAWFORD**, Respondent,

**Marc Johnson, Defendant,**

**Farm Power & Equipment, Inc.,** et al., Respondents.

No. C8–98–1741.

Court of Appeals of Minnesota.

March 2, 1999.

---

Wilbur W. Fluegel, Wentzel & Fluegel, Minneapolis, MN; and James P. Carey, Sieben, Grose, Von Holtum, McCoy & Carey, Ltd., Minneapolis, MN (for appellant).

Jeanne H. Unger, Rider, Bennett, Egan & Arundel, LLP, Minneapolis, MN (for respondent Crawford)

William M. Hart, Gary W. Hoch, Meagher & Geer P.L.L.P., Minneapolis, MN (for respondents Farm Power & Equipment et al.)

Considered and decided by LANSING, Presiding Judge, SCHUMACHER, Judge, and WILLIS, Judge.

## OPINION

SCHUMACHER, Judge.

Appellant Amy Marsden (Norby), mother and natural guardian for Riley Lin Marsden, a minor, (Marsden) challenges the trial court's grant of summary judgment dismissing her claim that respondent Katherine Crawford breached their daycare contract by failing to use the required child restraint system. Marsden argues that Minn.Stat. § 169.685, subd. 4 (1998) does not apply to her breach of contract claim. We affirm.

### FACTS

In the afternoon of May 24, 1996, Crawford was driving to respondent Farm Power & Equipment, Inc.'s store to exchange a loaner vehicle for her vehicle. Crawford was a licensed daycare provider, and in the car with her were five children. Marsden's three-year-old daughter Riley was seated in the middle of the back seat. As Crawford waited to make a left turn into the Farm Power parking lot, Marc Johnson struck the car she was driving from behind. As a result of the collision, Riley suffered a serious trau-

matic brain injury. According to Crawford, Riley's seat belt was fastened before the collision. Her seat belt was loose and not locked in place, however, after the crash. Marsden and Crawford had a written daycare contract in which Crawford agreed to properly restrain Riley while riding in an automobile.

Marsden brought this action against Crawford, Farm Power, and Johnson in which she alleged, inter alia, that Crawford violated the daycare contract by failing to properly restrain Riley and that Farm Power is vicariously liable for Crawford's breach of contract. The parties entered into a settlement agreement whereby Marsden agreed to satisfy any judgment against Crawford out of the proceeds of her homeowner's policy. From Johnson's insurer, Marsden received the bodily injury liability policy limit of $50,000 in partial satisfaction for all liability claims against him. From the motor vehicle insurers of Crawford and Farm Power, Marsden received a total of $80,000 in underinsured motorist benefits. On summary judgment, the trial court determined that the presentation of evidence to support Marsden's contract claim was barred by Minn.Stat. § 169.685, subd. 4, commonly referred to as the "seat belt gag rule."

### ISSUE

Did the trial court correctly determine that Minn.Stat. § 169.685, subd. 4 prohibits Marsden from presenting evidence of Crawford's failure to properly restrain Riley?

### ANALYSIS

■ On appeal from summary judgment, the interpretation of a statute is a question of law and is reviewed de novo. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn. 1985). When interpreting a statute, our function is to ascertain and effectuate the intention of the legislature. Minn.Stat. § 645.16 (1998). If a statute is free from ambiguity, we will examine only its plain language. *Tuma v. Commissioner of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn.1986). If, however, a statute's literal meaning leads to an absurd result that utterly departs from the legislature's purpose, this court may look beyond the language and examine other indicia of legislative intent. *Wegener v. Commissioner of Revenue*, 505 N.W.2d 612, 617 (Minn.1993). By contrast, if a statute's unambiguous language merely produces a troubling result, we must apply it without reference to its drafting history. *Anker v. Little*, 541 N.W.2d 333, 338 (Minn.App.1995), *review denied* (Minn. Feb. 9, 1996).

■ Minn.Stat. § 169.685, subd. 4, the "seat belt gag rule," states:

Proof of the use or failure to use seat belts or a child passenger restraint system as described in subdivision 5, or proof of the installation or failure of installation of seat belts or a child passenger restraint system as described in subdivision 5 shall not be admissible in evidence in any litigation involving personal injuries or property damage resulting from the use or operation of any motor vehicle.

As we have stated, the language of the seat belt gag rule

is unambiguous in prohibiting the admission of evidence of the use or nonuse of seat belts in *any* litigation involving personal injury that results from the use or operation of a motor vehicle.

*Anker*, 541 N.W.2d at 336. Minnesota courts have repeatedly rejected challenges to the broad scope of the statute's preclusion. This court previously found that evidence of the failure to use a seat belt or child restraint system may not be admitted to affirmatively defend a tort claim. *See Swelbar v. Lahti*, 473 N.W.2d 77, 79 (Minn.App.1991) (holding that evidence of use of child restraint system is not admissible to defend wrongful death claim); *Lind v. Slowinski*, 450 N.W.2d 353, 359 (Minn.App.1990) (holding that seat belt evidence not admissible in negligence litigation), *review denied* (Minn. Feb. 21, 1990). We have also determined that the seat belt gag rule applies in crashworthiness actions to unambiguously prohibit the admission of evidence regarding the use of seat belts. *Anker*, 541 N.W.2d at 339. In *Olson v. Ford Motor Co.*, 558 N.W.2d 491 (Minn.1997), the supreme court agreed that the seat belt gag rule bars "the introduction of evidence of the

plaintiff's personal seat belt use in a crashworthiness action." *Id.* at 496.

 We find that the seat belt gag rule's plain, broad language also bars the presentation of evidence to support Marsden's breach of contract claim. Marsden's claim is "litigation involving personal injuries * * * resulting from the use or operation of any motor vehicle." Minn.Stat. § 169.685, subd. 4. While Marsden's contract claim is different from the tort claims discussed in *Lind, Anker, Swelbar,* and *Olson,* those differences do not justify the creation of an exception to the seat belt gag rule. In this case, Minn.Stat. § 169.685, subd. 4 may produce a troubling result, but "our function is not to second guess, but to give effect to, the legislature's will." *Anker,* 541 N.W.2d at 338. Accordingly, we cannot ignore the broad preclusive effect of the rule's plain language.

In examining the legislative purpose behind the seat belt gag rule, the legislature may not have intended to bar any and all claims resulting from the use or nonuse of seat belts. As the supreme court stated in *Olson,* the legislature's ban on evidence of the use of seat belts likely represented an effort to balance the interests of the motoring public with those of automobile manufacturers. 558 N.W.2d at 495. However, both houses of the legislature have considered and rejected bills to eliminate or modify the seat belt gag rule's plain language. *Id.,* 558 N.W.2d 491, n. 3. Unless and until the legislature chooses to limit the broad scope of the Minn.Stat. § 169.685, subd. 4, the seat belt gag rule precludes litigants such as Marsden from presenting evidence of the failure to use a seat belt or child restraint system.

## DECISION

The trial court properly determined that Minn.Stat. § 169.685, subd. 4 prohibits Marsden from proving her breach of contract claim by presenting evidence of Crawford's failure to restrain Riley properly. Because our decision on this issue is dispositive, we need not determine whether Marsden can recover from Crawford under her homeowner's policy or whether Farm Power may be held vicariously liable for Crawford's breach of contract.

Affirmed.