**STATE of Minnesota, Respondent,**

v.

**Christopher James HAYES, Appellant.**

**No. A11–1314.**

Supreme Court of Minnesota.

Feb. 27, 2013.

Lori Swanson, Attorney General, Saint Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Suzanne M. Senecal–Hill, Assistant State Public Defender, Saint Paul, MN, for appellant.

## OPINION

STRAS, Justice.

A jury found appellant Christopher James Hayes guilty of first-degree felony murder while committing a drive-by shooting and second-degree intentional murder. The district court convicted Hayes of first-degree felony murder and sentenced him to life imprisonment with the possibility of release. Hayes challenges his conviction on two grounds. First, he argues that the record contains insufficient evidence to sustain his conviction. Second, he contends that the court committed reversible error when it admitted testimony at trial that a witness was threatened and attacked for being a "snitch." We conclude that the evidence was insufficient to prove that Hayes committed a drive-by shooting, but reject Hayes's evidentiary challenge. We therefore reverse Hayes's conviction of first-degree felony murder and remand to the district court with instructions to enter a judgment of conviction and impose sentence on the second-degree intentional murder count.

### I.

The State filed a criminal complaint charging Hayes with one count of second-

degree intentional murder for the death of Christopher DeRonde. A grand jury subsequently indicted Hayes on two additional counts: first-degree premeditated murder and first-degree felony murder while committing a drive-by shooting. The charges against Hayes arose from a shooting in Minneapolis on September 17, 2010.

At approximately 11:15 a.m. on September 17, T.S. was visiting a house on Colfax Avenue North. A short time later, T.S. noticed a red car approach the intersection of 30th Avenue North and Colfax Avenue North. She saw three men inside the car: the driver, a front seat passenger, and a back seat passenger who sat directly behind the front seat passenger. The windows of the red car were not tinted and the front seat passenger looked directly at T.S. Thus, T.S. observed details about the front seat passenger's appearance—including his facial hair, complexion, size, and clothing. During a photographic lineup at the police station after the shooting and at Hayes's trial, T.S. identified the front seat passenger as Hayes. T.S. was unable to identify the car's driver.

T.S. watched Hayes grab the shirt of the back seat passenger and point a dark silver gun at him. Hayes then glanced at T.S., who turned around and started walking away from the car. As T.S. walked away, she heard a loud "popping" sound consistent with a gunshot. After hearing the "popping" sound, T.S. glanced back toward the intersection and saw the back seat passenger exit the car, run across the street while holding his chest, and eventually collapse on the sidewalk on the northeast side of the intersection. The car then drove away.

A short time later, Minneapolis police arrived at the scene of the shooting, where officers found a body—later identified as Christopher DeRonde—near the northeast side of the intersection. DeRonde was dead by the time the police arrived. The police later interviewed T.S., who described what she saw and heard before, during, and after the shooting. Two other witnesses also heard a gunshot, but neither saw the shooting occur.

Although the police did not find any spent casings at the scene, an autopsy conducted by the Hennepin County medical examiner determined that DeRonde died as the result of a single gunshot wound. The characteristics of the entry wound revealed that the shooter fired the gun from no more than three or four feet away from DeRonde. The medical examiner testified at Hayes's trial that the bullet's trajectory through DeRonde's body was consistent with the theory that DeRonde was "leaning over" to get out of the car when the shooter fired at DeRonde.

Four days after the shooting, Minneapolis Police Sergeant Ann Kjos learned that police officers had stopped a red Dodge Intrepid that matched the car depicted in surveillance video footage from the date and location of the murder. At the time of the stop, the car's driver was Michael Funches, Jr. and Hayes was in the passenger seat. The police seized the car and obtained a warrant to search it. The car did not contain any spent casings, bullet holes, or blood, but the police learned that Funches's girlfriend owned the car. In a subsequent interview, Funches's girlfriend told Sergeant Kjos that Funches had used the car to drive her to and from work and lunch on September 17, the date of the murder. Two days after the interview with Funches's girlfriend, Sergeant Kjos questioned Funches. Funches explained that he drove the car to several locations on the morning of September 17 before taking his girlfriend to lunch, and that Hayes had accompanied him for part of the morning. Sergeant Kjos then showed Funches a photograph of DeR-

onde. Funches told Sergeant Kjos that he and Hayes had purchased marijuana from DeRonde in the past, but that the last time he had seen DeRonde was several days before September 17.

The next day, the police arrested Hayes and Funches. Sergeant Kjos once again interviewed Funches. This time, Funches provided a different account of the events from the date of the murder. Funches explained that Hayes wanted to purchase marijuana that morning. The two drove around the neighborhood until they eventually picked up DeRonde, who sat in the back seat of the car. As Funches drove, DeRonde handed Hayes a bag of marijuana. Hayes refused to pay for the marijuana, however, because he was dissatisfied with its quality. Once Funches stopped the car, Hayes locked the car doors, which prevented DeRonde from leaving. Hayes then pulled a gun from beneath his clothing and pointed it at DeRonde. Funches told Hayes to let DeRonde go, but Hayes refused to do so. DeRonde eventually opened the car door on his own and began to leave, at which point Hayes shot DeRonde. Funches then drove away.

Funches testified against Hayes at the grand jury proceedings and the jury trial that followed. At trial, Funches's testimony was consistent with the facts contained in his second statement to the police. The jury found Hayes not guilty of first-degree premeditated murder, guilty of first-degree felony murder while committing a drive-by shooting, and guilty of second-degree intentional murder. The district court convicted Hayes of first-degree felony murder while committing a drive-by shooting and sentenced him to life imprisonment with the possibility of release. The court did not adjudicate Hayes's guilt or sentence him on the count of second-degree intentional murder.

## II.

■ The first question presented by this case is whether the State presented sufficient evidence to support Hayes's conviction of first-degree felony murder while committing a drive-by shooting. *See* Minn.Stat. §§ 609.185(a)(3), 609.66, subd. 1e (2012). Hayes's argument on appeal focuses on whether his conduct in shooting DeRonde was sufficient to constitute the offense of drive-by shooting—the predicate felony to his conviction of first-degree felony murder. More specifically, Hayes argues that he cannot be guilty of drive-by shooting because he did not fire his gun at or toward another motor vehicle or a building. Whether Hayes's conduct in this case meets the definition of a drive-by shooting presents a question of statutory interpretation that we review de novo. *See State v. Leathers,* 799 N.W.2d 606, 608 (Minn.2011).

### A.

■ To evaluate Hayes's argument, we must examine and interpret the statute defining the offense of drive-by shooting, which states as follows:

(a) Whoever, while in or having just exited from a motor vehicle, recklessly discharges a firearm at or toward another motor vehicle or a building is guilty of a felony and may be sentenced to imprisonment for not more than three years or to payment of a fine of not more than $6,000, or both.

(b) Any person who violates this subdivision by firing at or toward a person, or an occupied building or motor vehicle, may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both.

Minn.Stat. § 609.66, subd. 1e. When interpreting a statute, we "give words and phrases their plain and ordinary meaning."

*Premier Bank v. Becker Dev., LLC,* 785 N.W.2d 753, 759 (Minn.2010) (citing Minn. Stat. § 645.08 (2012)). "If a statute is unambiguous, then we must apply the statute's plain meaning." *Larson v. State,* 790 N.W.2d 700, 703 (Minn.2010). If, on the other hand, a statute is susceptible to more than one reasonable interpretation, then the statute is ambiguous and we may consider the canons of statutory construction to ascertain its meaning. *See Lietz v. N. States Power Co.,* 718 N.W.2d 865, 870–71 (Minn.2006). As we explain below, section 609.66, subdivision 1e(b) is ambiguous because the phrase "violates this subdivision by" is susceptible to more than one reasonable interpretation.

One reasonable interpretation of section 609.66, subdivision 1e(b), advanced by the State, is that subdivision 1e(b) *modifies* the elements set forth in subdivision 1e(a) to create a separate, aggravated offense. The text of subdivision 1e(b) provides some support for the State's "separate offense" interpretation. The word "by," which is used in the phrase "violates this subdivision by," can mean "through the means or instrumentality of." *Webster's Third New International Dictionary* 306–07 (3d ed.1976). Applying that definition of the word "by," subdivision 1e(b) can be read to cover "[a]ny person who violates this subdivision [through the means or instrumentality of] firing at or toward a person, or an occupied building or motor vehicle." *See* Minn.Stat. § 609.66, subd. 1e(b). The substitution of the phrase "through the means or instrumentality of" for the word "by" suggests that a person can commit the offense of drive-by shooting through firing at or toward an occupied building, an occupied motor vehicle, or a person. The "separate offense" interpretation replaces the "target" elements in subdivision 1e(a) ("another motor vehicle or a building") with those from subdivision 1e(b) ("a person, or an occupied building or motor vehicle") to create a separate, aggravated offense of drive-by shooting, while keeping all of the other material elements of both offenses the same. Under such an interpretation, a person violates subdivision 1e(b) by discharging a firearm at or toward an occupied building, an occupied motor vehicle, or a person while in, or having just exited, a motor vehicle.

Another reasonable interpretation of section 609.66, subdivision 1e(b), advanced by Hayes, is that it is a sentencing provision setting forth enhanced penalties for particularly serious violations of subdivision 1e(a). Under Hayes's "sentence enhancement" interpretation, subdivision 1e(b) does not create a separate offense, but merely provides for enhanced penalties *for those who satisfy the requirements of both* subdivision 1e(a) and subdivision 1e(b). An alternative definition of the word "by" supports the "sentence enhancement" interpretation. The word "by" can mean "during the course of." *Webster's Third New International Dictionary* 306–07 (3d ed.1976). Applying that definition of the word "by," subdivision 1e(b) can be read to cover "[a]ny person who violates this subdivision [during the course of] firing at or toward a person, or an occupied building or motor vehicle." *See* Minn.Stat. § 609.66, subd. 1e(b). The substitution of the phrase "during the course of" for the word "by" suggests that subdivision 1e(b) operates only when all of the elements in subdivision 1e(a) have been satisfied. Under such an interpretation, the offense of drive-by shooting is defined in its entirety in subdivision 1e(a), and subdivision 1e(b) provides for a sentence enhancement when a person, while committing a drive-by shooting, discharges a firearm at or toward an occupied building, an occupied motor vehicle, or a person.

Although the "separate offense" and "sentence enhancement" interpretations are both reasonable, we conclude that the better interpretation of subdivision 1e(b) is the "sentence enhancement" interpretation. The two provisions in subdivision 1e, when read together, provide a textual clue that subdivision 1e(b) is a sentencing provision. Subdivision 1e(a) contains the phrase "is guilty of a felony," which indicates that the provision creates and defines a criminal offense. Minn.Stat. § 609.66, subd. 1e(a). Subdivision 1e(b), by contrast, does not contain comparable language. To the contrary, subdivision 1e(b) states that violators "may be *sentenced*" to an enhanced term of imprisonment and a larger fine. Minn.Stat. § 609.66, subd. 1e(b) (emphasis added). The use of the phrase "may be sentenced" rather than "guilty of a felony" is an indication that subdivision 1e(b) is a sentencing provision. Indeed, the structure and language of subdivision 1e(b) resembles other Minnesota criminal statutes setting forth sentence enhancements, not those defining and creating criminal offenses. *See, e.g.,* Minn.Stat. § 609.378, subd. 1(a)(1) (2012) (setting forth the elements necessary to establish an offender's guilt of child neglect, followed by an additional element that, if proven, subjects the offender to a harsher penalty); *id.* § 609.255, subd. 3 (2012) (providing a similarly structured enhancement provision in the false-imprisonment statute).

■ Accordingly, we conclude that Minn.Stat. § 609.66, subd. 1e(b) is ambiguous because the phrase "violates this subdivision by" is susceptible to more than one reasonable interpretation. We further conclude that the better interpretation of subdivision 1e(b) is that it is a sentence-enhancement provision that is applicable only when a person has committed the criminal offense of drive-by shooting, as defined in Minn.Stat. § 609.66, subd. 1e(a).[1]

**B.**

■ The next step in evaluating Hayes's argument is to determine whether the evidence presented at Hayes's trial was sufficient to satisfy the elements of first-degree felony murder while committing a drive-by shooting. *See* Minn.Stat. §§ 609.185(a)(3), 609.66, subd. 1e. When considering a claim of insufficient evidence, we conduct "a painstaking review of the record to determine whether the evidence and reasonable inferences drawn therefrom, viewed in a light most favorable to the verdict, were sufficient to allow the jury to reach its verdict." *State v. Hohenwald,* 815 N.W.2d 823, 832 (Minn.2012) (citation omitted) (internal quotation marks omitted). In conducting such a review, we assume that the jury believed the State's witnesses and disbelieved any evidence to the contrary. *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989).

To obtain Hayes's conviction of first-degree murder while committing a drive-by shooting, the State was required to

---

1. We recognize that our interpretation leads to the strange result that a person who recklessly shoots at or toward another person while in or having just exited a motor vehicle, without also shooting at or toward a building or another motor vehicle, has not committed the offense of drive-by shooting. But as we have stated, "[i]t is the exclusive province of the [L]egislature to define by statute what acts shall constitute a crime." *State v. Forsman,* 260 N.W.2d 160, 164 (Minn.1977). It is our job, by contrast, to interpret and apply criminal statutes as written. Given our limited role of interpreting and applying criminal offenses set forth by statute, we will not reject the more persuasive interpretation of an ambiguous criminal statute simply because it may lead to strange results in some factual situations.

prove beyond a reasonable doubt that: (1) DeRonde died; (2) Hayes caused DeRonde's death; (3) Hayes acted with the intent to kill DeRonde; (4) at the time that Hayes caused DeRonde's death, Hayes was committing or attempting to commit the offense of drive-by shooting; and (5) Hayes's conduct occurred on September 17, 2010 in Hennepin County. Minn.Stat. § 609.185(a)(3); *see also* 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 11.09 (5th ed.2006). Hayes challenges the sufficiency of the evidence only with respect to the fourth element of the offense: whether he was committing, or attempting to commit, a drive-by shooting when he caused DeRonde's death. More specifically, Hayes argues that the evidence presented at his trial was insufficient to prove that he committed, or had attempted to commit, the predicate offense of drive-by shooting when he killed DeRonde. We agree.

To prove that Hayes committed a drive-by shooting, the State was required to establish beyond a reasonable doubt that: (1) Hayes was in or had just exited a motor vehicle; (2) Hayes recklessly discharged a firearm at or toward another motor vehicle or a building; and (3) Hayes's offense occurred on September 17, 2010 in Hennepin County. *See* Minn.Stat. § 609.66, subd. 1e(a). The evidence presented at trial failed to establish that Hayes discharged a firearm "at or toward *another* motor vehicle or a building." *Id.* (emphasis added). Instead, the evidence proved only that Hayes recklessly discharged a firearm at or toward the *same* motor vehicle in which Hayes was an occupant. Indeed, neither party disputes that DeRonde—the target of the shooting—was in or just beginning to exit the same motor vehicle as Hayes. Nor was there any evidence that Hayes discharged, or attempted to discharge, his firearm at or toward a

building or another motor vehicle. Therefore, the evidence presented at Hayes's trial was insufficient to prove that Hayes committed a drive-by shooting, as defined in Minn.Stat. § 609.66, subd. 1e(a).

The State disagrees, arguing that the evidence presented at trial unequivocally proved that Hayes recklessly discharged a firearm at or toward DeRonde, who qualifies as a "person" under Minn.Stat. § 609.66, subd. 1e(b). To accept the State's argument, however, we would have to adopt the "separate offense" interpretation of Minn.Stat. § 609.66, subd. 1e(b)— an interpretation of the statute that we have already considered and rejected. Accordingly, we reverse Hayes's conviction of first-degree felony murder because the State failed to prove that Hayes committed, or attempted to commit, the predicate offense of drive-by shooting when he caused DeRonde's death.

### III.

■ Notwithstanding our reversal of Hayes's conviction of first-degree felony murder while committing a drive-by shooting, we must address the second question presented by this case—an evidentiary challenge—because the jury also found Hayes guilty of second-degree intentional murder. More specifically, Hayes argues that the district court erred when it admitted into evidence Funches's testimony that he was attacked in prison on two separate occasions before Hayes's trial. In the first incident, two inmates who Funches did not know physically attacked him approximately one month prior to the trial. In the second incident—which occurred several weeks later—a different inmate approached Funches with a small sharp weapon and forced him to write a letter apologizing to Hayes for "lying." Hayes asserts that Funches's trial testimony about the threats and physical attacks sus-

tained by Funches in prison was irrelevant and that the unfair prejudice posed by the testimony substantially outweighed its minimal probative value. Hayes failed to object to the challenged testimony at trial.

■■ "When a defendant fails to object to an alleged error at trial, we review for plain error." *State v. Hill,* 801 N.W.2d 646, 654 (Minn.2011). In applying plain-error review, we will reverse only if (1) there is error, (2) the error is plain, and (3) the error affected the defendant's substantial rights. *See id.* An error affects a defendant's substantial rights if the error was "prejudicial and affected the outcome of the case." *State v. Griller,* 583 N.W.2d 736, 741 (Minn.1998). If the first three prongs of plain-error review are satisfied, we then assess whether we "should address the error to ensure fairness and the integrity of the judicial proceedings." *Hill,* 801 N.W.2d at 654 (citation omitted) (internal quotation marks omitted).

■■ The district court did not abuse its discretion by admitting the challenged testimony. "Evidence of witnesses' fears of testifying and of purported threats against witnesses both tend to be relevant to general witness credibility or to explain a witness's reluctance to testify or inconsistencies in a witness's story." *State v. McArthur,* 730 N.W.2d 44, 52 (Minn.2007). In *McArthur,* the appellant challenged the testimony of five witnesses who testified that fear explained their general reticence to participate in the case and, with respect to some witnesses, their prior inconsistent statements. *Id.* at 50–51. We noted that the best practice "[i]n most cases" is "to limit a witness's testimony about … threats or fears to redirect examination." *Id.* at 52. But we further explained that "it may be appropriate for a party to anticipate a challenge to witness credibility and to attempt to explain expected issues of credibility on direct examination." *Id.* at

51. Because the assessment of the admissibility of "witnesses' fears" is a highly fact-specific determination, we leave it to the district court's discretion "to fashion appropriate safeguards," such as a cautionary instruction to the jury, when such evidence is admitted. *Id.* at 52. We ultimately concluded in *McArthur* that the district court did not abuse its discretion in admitting the challenged testimony because the State's questions were "designed to preempt attacks by the defense on the credibility of witnesses and to explain inconsistencies in their statements and any delays in coming forward." *Id.*

The circumstances presented here are nearly identical to those in *McArthur.* The State elicited the challenged testimony to "preempt attacks by the defense" on Funches's credibility and to explain why Funches wrote letters to his brother and Hayes stating that he lied when he told the police that Hayes shot and killed DeRonde. In other words, the State introduced Funches's testimony regarding the threats and attacks to bolster Funches's credibility by explaining Funches's prior inconsistent statements, which was the State's objective when introducing the "fear" testimony in *McArthur.* Based on *McArthur,* we conclude that the challenged testimony in this case was relevant. *See generally* Minn. R. Evid. 402 (stating that all relevant evidence is admissible, except as otherwise provided by law).

■ We also conclude, based on *McArthur,* that the challenged testimony was not unfairly prejudicial to Hayes. In *McArthur,* we concluded that the challenged testimony of the five witnesses was admissible because the district court displayed the proper "sensitivity to the potential for unfair prejudice" in admitting the testimony and "the clear focus of the state's case was the ample eyewitness testimony implicating [the appellant] as the shooter." 730

N.W.2d at 52–53. Like *McArthur*, the record in this case demonstrates that the focus of the State's case was on the eyewitness testimony and other evidence that pointed to Hayes as the shooter. Moreover, when viewed in context, the challenged testimony did not suggest that Hayes was responsible for the threats and physical attacks against Funches, which is the most serious risk posed by evidence of witness intimidation. *See id.* at 52 (stating that district courts should "ensure that *evidence* of fears of or threats by the defendant or others is not used to improperly attack the defendant's character"). Rather, Funches testified that strangers attacked him, other inmates generally dislike people who "snitch," and that Hayes never contacted him or sent anyone to visit him. Based on *McArthur*, we reject Hayes's argument that the danger of unfair prejudice from the challenged testimony substantially outweighed its probative value. *See generally* Minn. R. Evid. 403 (stating that relevant evidence is inadmissible at trial if the danger of unfair prejudice substantially outweighs the probative value of the evidence).

■■■ Finally, Hayes contends that the district court abused its discretion when it failed to provide a cautionary instruction to the jury on the proper use of the challenged testimony. To be sure, we stated in *McArthur* that appropriate safeguards, including a cautionary instruction, may be required in some circumstances "to prevent [fear] evidence from being misused" by the jury. 730 N.W.2d at 51 (citing *State v. Clifton*, 701 N.W.2d 793, 797–98 (Minn.2005)). But we did not conclude that the district court's failure to give such an instruction in *McArthur* was reversible error, and we decline to do so here. Just as in *McArthur*, Hayes did not request a cautionary instruction for the jury, "perhaps as a matter of strategy—

and '[o]rdinarily it is not plain error for the trial court to fail to *sua sponte* give an instruction.'" *Id.* at 53 (quoting *State v. Vance*, 714 N.W.2d 428, 442–43 (Minn. 2006)).

Because we conclude that the district court did not abuse its discretion in admitting the challenged testimony, we need not, and do not, consider the remaining prongs of the plain-error test. *See State v. Pilot*, 595 N.W.2d 511, 518 (Minn.1999).

### IV.

For the foregoing reasons, we reverse Hayes's conviction of first-degree felony murder and remand to the district court with instructions to enter a judgment of conviction and impose sentence on the second-degree intentional murder count.

Reversed and remanded.

WRIGHT, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.