**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0305**

State of Minnesota,
Respondent,

vs.

Ronald Gene Kremmin,
Appellant.

**Filed January 3, 2017
Reversed
Connolly, Judge**

Rice County District Court
File No. 66-CR-15-941

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Fossum, Rice County Attorney, Terence J. Swihart, Assistant County Attorney, Faribault, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Connolly, Judge; and Reilly, Judge.

### S Y L L A B U S

The plain language of Minn. Stat. § 609.605, subd. 1(b)(8) (2014), which defines the crime of trespass, requires both a command to leave the property and a command not to return to the property.

# **O P I N I O N**

**CONNOLLY**, Judge

Appellant challenges the sufficiency of the evidence to support his conviction for misdemeanor trespassing, arguing that the property owner did not tell him to leave the property and that the plain language of the statute requires both a command to leave and a command not to return. Because the plain language of Minn. Stat. § 609.605, subd. 1(b)(8), requires both commands, we reverse appellant's conviction.

## **FACTS**

Appellant Ronald Gene Kremmin and his wife had separated at the time of the charged offense, and appellant's wife and son lived at the house of S.S. Appellant's wife knew S.S. because S.S. boards horses, including the horse co-owned by appellant and his wife. On April 8, 2015, appellant went to S.S.'s property and took the co-owned horse back to his farm. Later that day when S.S. and appellant's wife realized the horse was gone, they went to appellant's farm to retrieve the horse. Appellant and S.S. met on the roadway next to appellant's farm, where appellant shouted profanities at S.S. S.S. told appellant never to return to her property. At an unidentified time shortly after the incident, S.S. told another horse-boarding client, P.M., about the incident.

On April 15, 2015, P.M. saw appellant drive into S.S.'s driveway, pause briefly, and drive away. P.M. told S.S., who called the police. A deputy took statements from S.S. and P.M. P.M. described the truck she saw to the deputy, and the deputy drove past appellant's house to confirm that the description matched appellant's truck. The deputy mailed

2

appellant a citation for trespassing. In subsequent conversations between the deputy and appellant, appellant made conflicting statements as to whether he entered the property.

A jury heard the case in August 2015. Following the presentation of respondent State of Minnesota's case, defense counsel made a motion for a judgment of acquittal. Defense counsel argued that respondent had not proved the elements of the trespass offense because S.S. did not tell him both to *leave* the property and not return. The district court denied counsel's motion.

Appellant subsequently testified at trial, discussing the incident at his farm and admitting that he pulled into the driveway of S.S. on April 15, 2015. Later, in his closing argument, defense counsel argued that appellant should be acquitted because S.S. never told him to leave the property, despite the district court's prior ruling that the state did not have to prove that appellant was both on the property and told to leave. After respondent's objection, the district court noted it had already ruled on that issue and would not allow defense counsel to continue with the argument. The parties questioned this ruling's impact on the jury instructions, and the district court added the following sentence to the jury instructions over defense counsel's objection: "It is not required that the defendant be on the property when told not to return."

The jury found appellant guilty of trespassing, defense counsel renewed the motion for a judgment of acquittal, and the district court denied the motion. Shortly thereafter, defense counsel filed a motion for judgment of acquittal or new trial, which the district court denied. In January 2016, the district court sentenced appellant. This appeal follows.

**ISSUE**

Did sufficient evidence support appellant's conviction despite a lack of proof that S.S. told appellant to leave her property?

**ANALYSIS**

Where an appellant challenges the sufficiency of the evidence, "our review on appeal is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). "We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that a defendant was proven guilty of the offense charged." *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004) (quotation omitted).

Whether or not respondent had to prove that someone told the appellant both to leave and not to return "presents a question of statutory interpretation that we review de novo." *See State v. Hayes*, 826 N.W.2d 799, 803 (Minn. 2013). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014). If a statute is "susceptible to more than one reasonable interpretation, then the statute is ambiguous and we may consider the canons of statutory construction to ascertain its meaning." *Hayes*, 826 N.W.2d at 804. If a statute is unambiguous, we apply its plain meaning. *Id.* "[C]ourts should construe a statute to avoid absurd results and unjust consequences[,]" and "reviewing courts should give a reasonable and sensible construction to criminal statutes." *State v. Greenman*, 825 N.W.2d 387, 390

4

(Minn. App. 2013) (quotations omitted).  Absurdity will not override the plain meaning of an unambiguous statute "except in an exceedingly rare case in which the plain meaning of the statute 'utterly confounds' the clear legislative purpose of the statute." *State v. Garcia-Gutierrez*, 844 N.W.2d 519, 526 (Minn. 2014).

The statute at issue is titled "Trespass" and the relevant subsection reads as follows:

> (b)  A person is guilty of a misdemeanor if the person intentionally:
>
> . . . .
>
> (8)  *returns to the property of another within one year after being told to leave the property and not to return,* if the actor is without claim of right to the property or consent of one with authority to consent.

Minn. Stat. § 609.605, subd. 1(b)(8) (emphasis added).

In the absence of an applicable statutory definition, "we generally give statutory terms their common meaning." *State v. Rick*, 835 N.W.2d 478, 483 (Minn. 2013).  "In the absence of a statutory definition, we look to dictionary definitions to determine the plain meaning of words." *State v. Haywood*, 886 N.W.2d 485, 490 (Minn. 2016).  Black's Law Dictionary defines "leave," in part, as "[d]eparture; the act of going away." *Black's Law Dictionary* 1027 (10th ed. 2014).  The American Heritage College Dictionary defines leave similarly: "to go out of or away from." *The American Heritage College Dictionary* 789 (4th ed. 2007).

There is no evidence and respondent does not allege that appellant was on S.S.'s property when she told him never to return to the property.  Accordingly, he could not have been told to depart that property—to leave, as the statute requires.  The requirements that one must be told to "leave" and "not to return" are joined in the statute by an "and," which

5

"ordinarily has a conjunctive meaning." *State v. Nelson*, 842 N.W.2d 433, 440 (Minn. 2014).

The statutory requirements of a command both to leave the property and a command not to return ensure clarity and notice of exactly what behavior is prohibited. The rule of lenity, while ordinarily applied to resolve an ambiguity, rests on a foundational principle of criminal law that informs our analysis. *Rick*, 835 N.W.2d at 486. "The rule of lenity vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed." *Id.* (quotation omitted). It is easily conceivable that one could get in a fight away from home and instruct a listener not to return to the speaker's property, and for that listener not to know what property that exactly entails (for instance, if the speaker was a landlord with multiple properties). As noted by Professor Wayne R. LaFave:

> [T]he common requirement of criminal trespass offenses is that the actor be aware of the fact that he is making an unwarranted intrusion, which serves to exclude from criminal liability both the inadvertent trespasser and the trespasser who believes that he has received an express or implied permission to enter or remain.

3 Wayne R. LaFave, *Substantive Criminal Law* § 21.2c at 234 (2d ed. Supp. 2016) (quotations omitted). Requiring a command to leave the property and a command not to return avoids criminalizing the conduct of an inadvertent trespasser by clearly identifying the property from which the trespasser is prohibited.

Further, the broader reading of the statute respondent asserts would permit private citizens to criminalize more behavior of other private citizens. Under this particular

6

subdivision of the trespassing statute, private citizens can instruct another to leave their property and not return, rendering any return to the property a criminal act punishable by up to 90 days in jail and up to a $1,000 fine. Minn. Stat. §§ 609.03 (3) (2014), .605, subd. 1(b)(8). Including a requirement of both a command to leave the property and a command not to return allows property owners to protect their interests in privacy and control over their property, but also prevents abuse of this unusual power by limiting the exercise of such power to within the property owner's own property lines.

Respondent does not contest the plain-language definition of leave or suggest an alternative reading to render the statute ambiguous. Rather, respondent argues that appellant's interpretation is absurd. Respondent suggests that such an interpretation would allow a trespasser to

> enter another person's property without claim of right, root around the property, and then leave before the property owner has the opportunity to instruct the intruder to leave. Moreover, even if the property owner later located the intruder and instructed him to stay away, under appellant's interpretation this would not be sufficient because the property owner neither told the intruder to leave the property nor did the owner state not to return while the intruder was on the property. As a result, the intruder could return time and time again, but leave before the property owner has the opportunity to instruct the intruder to leave.

Respondent argues that "Minnesota courts will not give effect to plain meaning if it produces an absurd or unreasonable result that departs from the purpose of the statute." Respondent then cites three civil cases to support this proposition, all of which are distinguishable. First, respondent cites *Anker*, which noted that when the plain meaning of a statute "utterly departs from the legislature's purpose," we may engage in a broader

7

inquiry. *Anker v. Little*, 541 N.W.2d 333, 336 (Minn. App. 1995), *review denied* (Minn. Feb. 6, 1996). But we must "exercise this authority sparingly and only when a party demonstrates the statute's plain language violates a *clearly* expressed goal of the legislature." *Id.* at 337. *Anker* went on to decline application of absurdity in favor of a plain-meaning interpretation. *Id.* at 340. Respondent also relies on *Olson*, in which the Minnesota Supreme Court again applied a plain-meaning interpretation. *Olson v. Ford Motor Co.*, 558 N.W.2d 491, 494-95 (Minn. 1997). Because the legislature's purpose in enacting the relevant statute in *Olson* was unclear, that court could not conclude the statute's plain language would produce "an absurd result that utterly confounds a clear legislative purpose." *Id.* at 495. Finally, respondent cites *Wegener*, which did apply the absurdity doctrine, but did so because a literal reading of the statute at issue would have rendered another statute largely inoperative and invalid "by giving it an unconstitutional effect." *Wegener v. Comm'r of Revenue*, 505 N.W.2d 612, 615-17 (Minn. 1993).

Respondent also relies on two unpublished criminal cases for support of its interpretation. But unpublished opinions are not precedential. Minn. Stat. § 480A.08, subd. 3(c) (2014). Additionally, both cases are distinguishable: they involved written trespass notices from corporations, rather than an oral notice from a private citizen as in appellant's case. *State v. Kelley*, A15-0749, 2016 WL 1396699, at *1 (Minn. App. Apr. 11, 2016); *State v. Montag*, A12-0036, 2012 WL 4052814, at *1 (Minn. App. Sept. 17, 2012).

The Minnesota Supreme Court discussed the absurdity doctrine in *Hyatt v. Anoka Police Dept.*, 691 N.W.2d 824, 827-28 (Minn. 2005). The supreme court concluded it "could disregard a statute's plain meaning only in rare cases where the plain meaning

8

utterly confounds a clear legislative purpose." *Id.* at 827 (quotation omitted).  The supreme court then referred to *Wegener* as "one such 'rare case'" before noting that it was "not aware of *any other situation* where [it has] allowed an absurdity analysis to override the plain meaning of a statute."  *Id.* at 827-28 (emphasis added).  We conclude that this is not another such "rare case."  Trespass statutes serve to prevent violence, protect privacy interests, and ensure control over one's property.  LaFave, *supra*, § 21.2.  Application of the statute's clear language cannot be said to utterly confound that purpose.  Rather, it adds a procedural requirement for accomplishing that purpose.

Additionally, other statutes proscribe respondent's scenario and protect property owners from trespass under similar circumstances.  Minn. Stat. § 609.749 criminalizes the return "to the property of another if the actor is without claim of right to the property or consent of one with authority to consent."  Minn. Stat. § 609.749, subd. 2(3) (2014).  Minn. Stat. § 609.748 criminalizes "repeated incidents of intrusive or unwanted acts . . . that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another," and allows victims to seek restraining orders.  Minn. Stat. § 609.748, subd. 1(a)(1), subd. 2.  While the plain meaning of Minn. Stat. § 609.605, subd. 1(b)(8) does not criminalize the behavior in respondent's hypothetical situation, other statutes provide protection for victims of such behavior.

We conclude that the plain meaning of Minn. Stat. § 609.605, subd. 1(b)(8), is not so absurd as to utterly confound the above legislative purpose, and as a result, respondent must show appellant was commanded both to leave the property and not to return to properly obtain a conviction.  In the final analysis, it is not our role to change the law or

9

add words to a statute. *Laase v. 2007 Chevrolet Tahoe*, 776 N.W.2d 431, 438 (Minn. 2009). That is the role of the legislature. *Id.* at 440. There is no question S.S. never told appellant to leave the property—neither party argues that she did, and no evidence presented at trial would support that conclusion. When an appellant challenges the sufficiency of the evidence, this court must conduct a "painstaking analysis" of the record to determine sufficiency. *Webb*, 440 N.W.2d at 430. Here, that review is rather brief: neither party presented evidence supporting the conclusion that S.S. told appellant to leave the property or that he was even on the property at the same time as S.S. on April 8 or April 15. The plain meaning of Minn. Stat. § 609.605, subd. 1(b)(8) and the paucity of evidence presented to show appellant was told to leave the property require the reversal of appellant's conviction.

Appellant also argues that the district court erred in denying the motion for a new trial when it altered the jury instruction, prevented defense counsel from arguing he had to be told to leave, and violated appellant's rights to testify and to due process by limiting his testimony regarding his dislike for S.S. Because the plain meaning of Minn. Stat. § 609.605, subd.1(b)(8) requires proof that appellant was told to leave the property and told not to return, the district court improperly altered the jury instruction. However, because we reverse appellant's conviction for insufficient evidence, we need not address this or appellant's remaining arguments challenging the district court's denial of his motion for a new trial.

## D E C I S I O N

The district court erred in determining that the state did not need to prove that appellant had been told both to leave the property and not to return where the plain meaning of the statute requires proof of both statements. Seeing no evidence to prove appellant was told to leave the property, we reverse appellant's conviction.

**Reversed.**